**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF RHODE ISLAND, )<br><br>Plaintiff, )<br><br>v. )<br><br>ATLANTIC RICHFIELD COMPANY, *et al.*, )<br><br>Defendants. ) | C.A. NO.:  1:17-cv-00204-WES |

**PLAINTIFF STATE OF RHODE ISLAND'S REPLY BRIEF**
**IN SUPPORT OF MOTION FOR ENTRY OF**
**<u>CASE MANAGEMENT ORDER</u>**

## TABLE OF CONTENTS

Introduction ............................................................................................................................. 1

I.     The New Hampshire MTBE case demonstrates that past costs for hundreds of sites may be proven on a statewide basis as requested in the State's CMO. ............................................... 2

II.    The Court's ruling on causation is consistent with the statewide approach of the State's proposed CMO and should not be reconsidered. ................................................................... 3

       A.   Motions for reconsideration are disfavored. ................................................................. 3

       B.   The Court already held that the case as pleaded by the State properly alleges causation and its ruling is consistent with a statewide case. .................................................................. 3

       C.   Defendants' other objections to a statewide approach are contradicted by the New Hampshire MTBE case, which employed a fair and efficient process that protected Defendants' due process rights. .................................................................................................. 7

III.   The New Jersey, Pennsylvania, and Puerto Rico cases *do* involve direct discharger claims, have not fully resolved, and have resulted in protracted satellite litigation over the selection of bellwether sites. ...................................................................................................... 10

IV.    The State has proposed a reasonable pretrial schedule. .......................................................... 14

V.     The State has valid claims for past costs. ............................................................................ 15

       A.   The State may recover MTBE past costs under the Water Pollution Act. ..................... 16

       B.   The State's common-law claims for past costs are not displaced by the USTFRA. ........ 17

       C.   The State's claims for past costs are not barred by remoteness. .................................... 22

Conclusion ............................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740 (E.D.N.Y. 1984) ................................................................. 6-7

*Andrade v. State*,
   448 A.2d 1293 (R.I. 1982) ...................................................................................18

*Ayers-Schaffner v. Solomon*,
   461 A.2d 396 (R.I. 1983), *recognized as superseded on other grounds by*
   *statute in Lake v. State*, 507 A.2d 1349 (R.I. 1986)..........................................17

*Benevides v. Kelly*,
   157 A.2d 821 (R.I. 1960) .....................................................................................18

*Biltcliffe v. CitiMortgage, Inc.*,
   772 F.3d 925 (1st Cir. 2014)..................................................................................3

*Boudreau v. Petit*,
   2019 WL 6117723 (D.R.I. Nov. 18, 2019)............................................................3

*City of Tulsa v. Tyson Foods, Inc.*,
   258 F. Supp. 2d 1263 (N.D. Okla. 2003), *vacated by settlement,* 2003 U.S.
   Dist. LEXIS 23416 (N.D. Okla. July 16, 2003)....................................................7

*Esposito v. O'Hair*,
   886 A.2d 1197 (R.I. 2005).............................................................................18, 22

*Godding v. Pierce*,
   13 R.I. 532 (1882).................................................................................................21

*Grant v. Slater Mill & Power Co.*,
   14 R.I. 380 (1884)...........................................................................................21, 22

*Hinck v. United States*,
   550 U.S. 501 (2007)..............................................................................................18

*Holmes v. Sec. Investor Prot. Corp.*,
   503 U.S. 258 (1992)..............................................................................................23

*Latin Am. Music Co. v. Am. Soc'y of Composers*,
   642 F.3d 87 (1st Cir. 2011)....................................................................................3

*Libertarian Party of Ohio v. Wilhem*,
   2020 WL 3036059 (S.D. Ohio June 5, 2020) .......................................................3

*Mauti v. Scuncio,*
    2010 WL 11519588 (D.R.I. May 25, 2010) ........................................................3

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
    859 F.3d 178 (2d Cir. 2017)........................................................................13

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
    725 F.3d 65 (2d Cir. 2013).................................................................5, 6, 11

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
    980 F. Supp. 2d 425 (S.D.N.Y. 2013).........................................................13

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
    824 F. Supp. 2d 524 (S.D.N.Y. 2011).........................................................13

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.,*
    591 F. Supp. 2d 259 (S.D.N.Y. 2008).....................................................5, 11

*Michie v. Great Lakes Steel Div. Nat'l Steel Corp.,*
    495 F.2d 213 (6th Cir. 1974) .......................................................................6

*Morabit v. Hoag,*
    80 A.3d 1 (R.I. 2013)..................................................................................21

*Mullins v. Direct Digital, LLC,*
    795 F.3d 654 (7th Cir. 2015) ...................................................................8, 9

*O'Neil v. Picillo,*
    883 F.2d 176 (1st Cir. 1989).......................................................................6

*Palmer v. Champion Mortg.,*
    465 F.3d 24 (1st Cir. 2006).........................................................................3

*Plummer v. Abbott Labs.,*
    568 F. Supp. 920 (D.R.I. 1983)..................................................................21

*Prob. Court of City of Warwick ex rel. Lawton v. Bank of Am., N.A.,*
    813 F. Supp. 2d 277 (D.R.I. 2011).............................................................21

*Rhode Island v. Atl. Richfield Co.,*
    357 F. Supp. 3d 129 (D.R.I. 2018)...................................................... *passim*

*Rhode Island Laborers' Health & Welfare Fund ex rel. Trs. v. Philip Morris, Inc.,*
    99 F. Supp. 2d 174 (D.R.I. 2000)...............................................................23

*Ruiz v. Rhode Island,*
    2018 WL 3647204 (D.R.I. Aug. 1, 2018)....................................................3

*Smith v. Tripp,*
    14 R.I. 112 (1883)......................................................................................18

iii

*State v. Exxon Mobil Corp.*,
   126 A.3d 266 (N.H. 2015) ................................................................... *passim*

Order on State's Motions in Limine to Exclude Evidence and Argument that the
   State Received Compensation for its Injury from Collateral Sources in *State of
   New Hampshire v. Hess Corp.*, No. 03-C-550 (N.H. Super. Ct. Jan. 4, 2013)
   (attached as Exh. C) .................................................................................19, 20

Order on Defendants' Motion to Reconsider This Court's Order on State's Motion
   in Limine to Exclude Evidence and Argument that the State Received Com-
   pensation for Its Injury from Collateral Sources and Order on Defendants'
   Motion for Summary Judgment on Plaintiff's Claims for Past and Future
   Costs in *State of New Hampshire v. Hess Corp.*, No. 03-C-550 (N.H. Super.
   Ct. Jan. 11, 2013) (attached as Exh. D) ...............................................20, 23

*State v. Lead Indus. Ass'n*,
   2001 R.I. Super. LEXIS 37 (R.I. Super. Ct. Apr. 2, 2001) ............................23

*State v. Pine*,
   524 A.2d 1104 (R.I. 1987) .......................................................................18, 19

*State v. Santos*,
   870 A.2d 1029 (R.I. 2005) ..............................................................................17

*Vandal v. Geo. T. McLauthlin Co.*,
   132 F. Supp. 279 (D. Mass. 1955) ..................................................................21

*Velsicol Chem. Corp. v. Rowe*,
   543 S.W.2d 337 (Tenn. 1976) ...........................................................................7

*Warren v. Parkhurst*,
   92 N.Y.S. 725 (N.Y. Sup. Ct. 1904), *aff'd*, 93 N.Y.S. 1009 (App. Div. 1905),
   *aff'd*, 78 N.E. 579 (N.Y. 1906) ........................................................................7

**Statutes**

R.I. Gen. Laws § 46-12.9-5(b)(4) .........................................................................19

R.I. Gen. Laws § 46-12-13.............................................................................17, 21

R.I. Gen. Laws § 46-12-16.....................................................................................16

R.I. Gen. Laws § 46-12-21.....................................................................................16

R.I. Gen. Law. § 46-13.1-2(1) ..............................................................................21

**Other Authorities**

Fed. R. Civ. P. 16(b) ................................................................................................1

Fed. R. Civ. P. 16(c)(2)(A), (D), (P) ................................................................13

Fed. R. Civ. P. 26(f) .............................................................................................1

Restatement (Second) of Torts § 902 ................................................................21

Defendants' ltr. to Hon. Vernon S. Broderick in *Commonwealth of Pennsylvania v. Exxon Mobil Co.*, No. 1:14-cv-06228 (S.D.N.Y. July 8, 2020) (attached without exhibits as Exh. A) ...............................................................................11

Letter from Tracey L. O'Reilly to Hon. Vernon S. Broderick in *Commonwealth of Pennsylvania v. Exxon Mobil Co.*, No. 1:14-cv-06228 (S.D.N.Y. July 15, 2020) (attached as Exh. B) ..................................................................................14

## INTRODUCTION

The State of Rhode Island (the "State") seeks entry of a basic and fundamental order. The State's proposed case management order ("CMO") would set a series of deadlines to move this case forward through discovery, experts, summary judgment, and trial, with the first deadline—for the completion of fact discovery—occurring on July 2, 2021.  The State's CMO is consistent with the case as pleaded: the State has sued the Defendants for their MTBE contamination of the State's groundwater and drinking water at known sites and wells throughout the State, and it seeks to complete the discovery, motions practice and any trial that may be necessary *once* in this comprehensive, statewide action against all refiner-supplier contributors to the harm.  Pursuant to Fed. R. Civ. P. 16(b) and 26(f), the State requests the entry of a CMO for the efficient and effective management of the litigation, and to provide the parties with established deadlines for the resolution of this case.

But more than three years after filing their motions to dismiss, more than eighteen months after the Court's ruling on their motions, and after over a year of discussions regarding a CMO, Defendants counter with a two-line, open-ended alternative "CMO" that lacks a single deadline.  Indeed, rather than seeking a CMO that moves the litigation towards resolution, Defendants instead invite the Court to hold off setting any dates at all in a CMO so that they may file another dispositive motion.  *See* Defendants' Response to Plaintiff's Motion for Entry of Case Management Order ("Defs. Br.") at 2.  Their stated reason for opposing a CMO allowing the entire case as pleaded by the State to move forward as one coherent whole is the same causation argument that Defendants unsuccessfully made in their motion to dismiss and that has been rejected repeatedly by juries and judges, i.e., the notion that an MTBE plaintiff cannot prove causation without tracing MTBE gasoline back up the supply chain to each individual defendant.  And Defendants' proposed, new dispositive motion regarding the State's past

MTBE-related expenditures raises an issue that they could have but did not raise in their previous motions to dismiss and that would not streamline the case in any event.

The State respectfully requests that the Court enter a CMO moving this entire case forward toward full and final resolution.  Any other approach will result in interminable delays in resolving this case, by trial or settlement, and would unfairly sever into multiple phases and trials a case that the State pleaded as one statewide case.

I.      **The New Hampshire MTBE case demonstrates that past costs for hundreds of sites may be proven on a statewide basis as requested in the State's CMO.**

The only MTBE litigation by a state that has reached full conclusion is the New Hampshire MTBE case and it decisively defeats Defendants' intransigent objection to the scope of discovery.  Defendants' steady drumbeat is that this case is too large and bellwether sites offer the only way to successfully litigate the case.  *See id.* at 22-27.  They reiterate the argument that the sheer number of past cost sites at issue—616 sites—makes statewide proof impossible and now justifies an additional dispositive motion to reduce the number of sites.  *See id.* at 1.  But the New Hampshire MTBE case, in which the parties completed discovery, expert reports, dispositive motions, and a trial in four years after discovery had begun, involved statewide proof of past costs at over 1,400 sites and thus repudiates Defendants' arguments.  *State v. Exxon Mobil Corp.*, 126 A.3d 266, 302 (N.H. 2015).[1]

The Court should resolve the State's motion for entry of a CMO now without further delay.

---

[1] In Superior Court proceedings in that case, a largely identical group of the same defendants as here did not even challenge whether past costs could be proven on a statewide basis but rather launched an unsuccessful challenge under *Daubert* to the expert's methodology for calculating past costs.  *See* Memorandum of Law in Support of Plaintiff State of Rhode Island's Motion for Entry of Case Management Order ("State Br.") at 7 & n.2.

II.   **The Court's ruling on causation is consistent with the statewide approach of the State's proposed CMO and should not be reconsidered.**

Defendants implicitly seek to re-argue the Court's ruling on causation.  Reconsideration

is not warranted.

### A.  Motions for reconsideration are disfavored.

"The granting of a motion for reconsideration is 'an extraordinary remedy which should

be used sparingly.'"  *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006) (quoting 11

Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed. 1995).[2]  The "hurdle

is a high one" because the movant "'must demonstrate either that newly discovered evidence (not

previously available) has come to light or that the rending court committed a manifest error of

law.'"  *Latin Am. Music Co. v. Am. Soc'y of Composers*, 642 F.3d 87, 91 (1st Cir. 2011) (quoting

*Palmer*, 465 F.3d at 29).  "A motion for reconsideration is not ... a mechanism to regurgitate old

arguments previously considered and rejected."  *Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925,

930 (1st Cir. 2014) (internal quotation marks omitted).  For these reasons, courts routinely reject

motions for reconsideration.  *Ruiz v. Rhode Island*, 2018 WL 3647204, at *3 (D.R.I. Aug. 1,

2018) ("There is no need to gild the lily—the new motion fails for all the reasons previously

discussed."); *Mauti v. Scuncio*, 2010 WL 11519588, at *1 (D.R.I. May 25, 2010) (party "simply

rehashes his prior arguments").

### B.  The Court already held that the case as pleaded by the State properly alleges causation and its ruling is consistent with a statewide case.

Defendants' opposition to the motion for a CMO implicitly includes an improper attempt

to relitigate a resolved issue.  *See* Defs. Br. at 12-17.  In 2017, Defendants moved to dismiss the

State's Complaint on multiple grounds, including causation.  The Court rejected Defendants'

---

[2] *See also Libertarian Party of Ohio v. Wilhem*, 2020 WL 3036059, at *2 (S.D. Ohio June 5, 2020) ("motions for reconsideration are looked upon with disfavor") (internal quotation marks omitted); *Boudreau v. Petit*, 2019 WL 6117723, at *2 (D.R.I. Nov. 18, 2019) ("well-established principle that the granting of a motion for reconsideration is an extraordinary remedy which should be used sparingly.") (internal quotation marks and brackets omitted).

argument on this issue. *Rhode Island v. Atl. Richfield Co.*, 357 F. Supp. 3d 129, 137-41 (D.R.I. 2018). Defendants have not come forward with any new evidence or intervening changes in the law—because there are none. Instead, Defendants simply re-argue the causation issue, apparently because the Court's prior ruling on causation is consistent with a statewide approach.[3]

The Court ruled with respect to causation that a plaintiff injured by the combined effect of multiple defendants' conduct may proceed against all of them, even where it is not possible to separate out the relative roles of each defendant due to the commingling of their identical products. *Atl. Richfield*, 357 F. Supp. 3d at 137-41. It further held this rule to be applicable under the State's allegations here, i.e., that Defendants made identical MTBE gasoline, commingled it in the supply chain leading into the State, and it is impossible to untangle and trace the commingled MTBE molecules in groundwater back to a particular Defendant. *Id.* The Court expressly based its ruling on the State's allegation that, "because of the way Defendants set up their supply chain, MTBE-tainted gasoline was untraceable *even before it crossed states lines.*" *Id.* at 137 (emphasis added). And it made clear that each Defendant "will have an opportunity to exculpate itself by showing that any MTBE found *polluting Rhode Island* could not have been its responsibility." *Id.* at 141 (emphasis added). Undaunted, Defendants now argue that they can disprove causation individually on a site-by-site basis by showing that "they never delivered MTBE gasoline to a particular release site." Defs. Br. at 17. That showing is irrelevant: MTBE from the Defendants was commingled long before it arrived in Rhode Island.

This is not a "self-serving presumption" with "no basis in fact or law" as Defendants say, Defs. Br. at 2, but rather is based upon a well-grounded ruling interpreting the law to be applied

---

[3] *Compare* Defs. Br. at 12-16 *with* Amended Memorandum of Law in Support of Defendants' Motion to Dismiss ("MOL MTD"), ECF 91-1, at 13-17.

to the case the State actually pleaded.  Moreover, as a factual matter, at least some of the Defendants in their answers have admitted that MTBE gasoline has no chemical markers linking it to a manufacturer, that it "can be" commingled in the distribution system, and/or that it "has at various times been commingled" during distribution.[4]  If that were not enough, this commingling of MTBE gasoline throughout Defendants' entire supply chain has been found repeatedly by judges and juries to be factually true, including by the jury in the trial of the City of New York MTBE case against Exxon,[5] by Judge Scheindlin on summary judgment in an MTBE case brought by a New York county,[6] and by the New Hampshire Superior Court in a pre-trial ruling

---

[4] *See, e.g.,* Defendants CITGO Petroleum Corporation's, CITGO Refining and Chemicals Company L.P.'s and PDV Midwest Refining, L.L.C.'s Answers and Affirmative Defenses to Plaintiff's Complaint, ECF No. 151 at ¶ 46 ("The CITGO entities admit that MTBE, the chemical, is fungible in the sense that it does not bear any markers that would identify the manufacturer.  The CITGO entities further admit that gasoline can be commingled in the distribution system but deny that gasoline always is commingled."); Answer to Plaintiff's Complaint of Exxon Mobil Corporation, ExxonMobil Oil Corporation, and Mobil Corporation, ECF No. 148, at ¶ 46 ("Admits in response to the allegations set forth in paragraph 46 of the Complaint only that gasoline containing MTBE from various refiners has at various times been commingled during transmission from refineries to distribution facilities."); *see also id.* at ¶ 45 ("Admits in response to the allegations set forth in paragraph 45 of the Complaint, only that, prior to the addition of any proprietary additive package, two petroleum products of the same grade and specification may be mixed or substituted one for the other").

[5] *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 725 F.3d 65, 116 (2d Cir. 2013) (holding plaintiff properly proved causation where "the City presented expert testimony that, because gasoline from different manufacturers was commingled before distribution, Exxon gasoline 'ended up in each of the retail gas stations in Queens and in their underground storage tanks' between 1985 and 2003") (citation omitted).

[6] *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 591 F. Supp. 2d 259, 268–69 (S.D.N.Y. 2008) (stating that "the parties do not dispute that gasoline containing MTBE is a fungible product, nor do they dispute that gasoline manufacturers—known as refiners—mix their products together for transportation and distribution, so that the gasoline sold at any given retail station contains the product of multiple refiners" and ruling on summary judgment that "it is likely that *some* of each defendant's gasoline was spilled somewhere in Suffolk County, leading to contamination in some of the wells.") (emphasis in original).

that was upheld on appeal by the state supreme court in New Hampshire's MTBE case.[7]  In fact, the New Hampshire Supreme Court decision looked to the fact of commingling in ruling that the trial court did not err in allowing New Hampshire to proceed to trial on a statewide basis; it is thus directly on point in this CMO motion.  *Exxon Mobil*, 126 A.3d at 301.

Defendants fare no better in arguing that the State's approach on causation here is different because the New Hampshire statewide approach "was entirely dependent on the adoption of market-share liability."  Defs. Br. at 15.  The trial court held that New Hampshire could proceed under either a market share theory or a more traditional causation approach relying on market share evidence as circumstantial evidence of causation.  *Exxon Mobil*, 126 A.3d at 298 (trial court denied Exxon's directed verdict motion because "'a reasonable jury could conclude that Exxon was the proximate cause of the State's alleged injury under a traditional causation theory'").  New Hampshire simply elected to try the case based upon the former approach but was allowed to try its entire case under either theory.  And in the City of New York's MTBE case, the Second Circuit upheld a jury verdict for the City in a ruling endorsing a causation approach very much like the one the Court has adopted here.  *In re MTBE*, 725 F.3d at 116-17.[8]  The Court need not and should not reconsider its causation ruling.

---

[7] *Exxon Mobil*, 126 A.3d at 301 ("tracing MTBE found in a contaminated well all the way back to the refiner is virtually impossible") (quoting trial court).

[8] In addition to the cases it already has invoked in support of its ruling, this Court has much good company in its causation approach under a long line of cases.  *See, e.g., O'Neil v. Picillo*, 883 F.2d 176, 178 (1st Cir. 1989) (basing CERCLA liability on common-law rule: "The rule adopted by the majority of courts, and the one we adopt, is based on the Restatement (Second) of Torts; damages should be apportioned only if the *defendant* can demonstrate that the harm is divisible.") (emphasis in original); *see also id*. at 179 n.4; *Michie v. Great Lakes Steel Div. Nat'l Steel Corp.*, 495 F.2d 213, 217 (6th Cir. 1974) (nuisance claim: "Where the injury itself is indivisible, the judge or jury must determine whether or not it is practicable to apportion the harm among the tortfeasors. If not, the entire liability may be imposed upon one (or several) tortfeasors subject, of course, to subsequent right of contribution among the joint offenders."); *In*

**C. Defendants' other objections to a statewide approach are contradicted by the New Hampshire MTBE case, which employed a fair and efficient process that protected Defendants' due process rights.**

The statewide approach applied in the New Hampshire MTBE case, which was expressly affirmed on appeal, resolved that case in an efficient and fair manner. Defendants' objections to the statewide approach are the same as in New Hampshire but the New Hampshire Supreme Court held that the statewide approach respected Defendants' due process and other rights.

*First,* with respect to injury, Defendants make the unremarkable point that it must be MTBE gasoline that causes the harm, not gasoline without MTBE. Defs. Br. at 18-19. This point merely states the obvious—the State solely seeks damages for the MTBE contamination across the state, not for contamination due to other gasoline constituents. And Defendants are quite familiar with the expert testimony for apportioning the costs of cleanup as between MTBE and other constituents in gasoline pollution; the issue was the subject of dueling expert reports in the New Hampshire MTBE case during pre-trial proceedings against all defendants and was presented to the jury, which rendered a verdict agreeing with New Hampshire in a trial against

---

*re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 823 (E.D.N.Y. 1984) ("In the pollution and multiple crash cases, the degree to which the individual defendant's actions contributed to an individual plaintiff's injuries is unknown and generally unascertainable," yet "all defendants have been held liable"); *City of Tulsa v. Tyson Foods, Inc.*, 258 F. Supp. 2d 1263, 1297 (N.D. Okla. 2003) ("[W]here there are multiple tortfeasors and the separate and independent acts of codefendants 'concurred, commingled and combined' to produce a single indivisible injury for which damages are sought, each defendant may be liable even though his/her acts alone might not have been a sufficient cause of the injury.") (citation omitted), *vacated by settlement,* 2003 U.S. Dist. LEXIS 23416 (N.D. Okla. July 16, 2003); *Velsicol Chem. Corp. v. Rowe*, 543 S.W.2d 337, 343 (Tenn. 1976) (adopting the ruling of *Michie*); *Warren v. Parkhurst*, 92 N.Y.S. 725, 727 (N.Y. Sup. Ct. 1904) (where "the act of one defendant would not so contaminate the stream that the plaintiff could complain of him" each is liable because "while each defendant acts separately, he is acting at the same time in the same manner as the other defendants, knowing that the contributions by himself and the others acting in the same way will result necessarily in the destruction of the plaintiff's property."), *aff'd*, 93 N.Y.S. 1009 (App. Div. 1905), *aff'd*, 78 N.E. 579 (N.Y. 1906).

Exxon of the entire case involving over 1,400 sites. Defendants, moreover, continue to confuse injury with the scope of damages associated with the State's injuries at each known site and well, which is a factual issue for the jury.[9]

*Second*, Defendants admit the use of statistical evidence is proper. The State in its opening brief set forth numerous cases so holding, State Br. at 25-26, and the Defendants grudgingly admit that such cases "stand for the general proposition that statistical evidence is sometimes admissible." Defs. Br. at 16 & n.10. To the extent expert statistical evidence may be necessary in this case, there is nothing inherently improper about such evidence and the issue as to the validity of any such evidence is a matter for a later stage of this case.

*Third*, the New Hampshire Supreme Court considered and rejected Defendants' contention that the "procedures applied in New Hampshire . . . conflict with Defendants' due process right" to put on individualized defenses. *Exxon Mobil*, 126 A.3d at 302, 304-05; *see also* Relevance Order at 26 ("nothing will prevent the defendants from introducing select, site-specific evidence") (attached to State Br. as Exh. B). Defendants' response to the New Hampshire Supreme Court's ruling on this point is to ignore it: they do not cite it at all in their response. Similarly, Defendants disregard all of the State's authorities holding that the use of aggregate methods of proof do not violate due process. *See* State Br. at 27.[10]

---

[9] Defendants cite a case where the plaintiff failed on summary judgment to establish any injury at all under a New Jersey statutory claim with respect to a particular site. Defs. Br. at 19 (citing *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 2014 WL 630636, at *3 (S.D.N.Y. Feb. 18, 2014) ("Plaintiffs' claims rest on an expert report which states that further investigation 'may' reveal the necessity of additional remediation or for primary restoration—or may reveal nothing.") (citation omitted)). But the plaintiff pursued a direct discharger approach in that case.

[10] Defendants cite *Mullins v. Direct Digital, LLC*, 795 F.3d 654 (7th Cir. 2015), but in that class-action case the court held that due process is satisfied as long as a "defendant will receive a fair opportunity to present its defenses." *Id.* at 670 (cited in Defs. Br. at 12). The Seventh Circuit cited with approval a First Circuit decision "rejecting [a] due process challenge to entry of class-

Defendants' due process concerns are meritless.  Within a statewide case, Defendants may litigate any site-specific defenses that Defendants wish to raise.  *See* State Br. at 6-8, 20-21; *cf.* Defs. Br. at 18-22.  In pressing this argument, Defendants overextend the scope of a site-specific defense.  Defendants contend that the issues of injury, warnings, and Defendants' control over the production and distribution of MTBE gasoline are site-specific, Defs. Br. at 18-20, but those issues are subject to common proof across all sites.  State Br. at 19 & n.12.  Indeed, in the New Hampshire case, Exxon admitted at trial that it gave no warnings to anyone, *Exxon Mobil*, 126 A.3d at 289, so it is hard to see how the issue possibly could be site-specific.

**Fourth,** Defendants argue that it is unsatisfactory to present their defenses via "exemplar" sites but this is the exact same approach upheld in New Hampshire.  *Id.* at 302, 304-05; Relevance Order at 26 ("nothing will prevent the defendants from introducing select, site-specific evidence or from attacking the opinions of the Plaintiff's experts"); *cf.* Defs. Br. at 18.  And there is nothing contradictory about having discovery proceed on all contaminated sites and wells, as in New Hampshire, while litigating defenses at trial using "exemplar" sites as a reasonable tool of trial management.  *Cf.* Defs. Br. at 4.

Finally, contrary to Defendants' assertions, New Hampshire's experts expressly accounted for the fact that every site is "different."  *Exxon Mobil*, 126 A.3d at 302 (internal quotation marks omitted); *cf.* Defs. Br. at 21.  Thus, statewide proof is not "divorced from the specific and unique facts of each site" but may account for them.  *Cf.* Defs. Br. at 21.  New Hampshire demonstrates that the State's proposed statewide approach here is fair, efficient, and respects Defendants' due process and other rights.

---

wide judgment and award of aggregate damages."  *Id.* (citing *In re Pharmaceutical Indus. Ave. Wholesale Price Litig.*, 582 F.3d 156, 197-98 (1st Cir. 2009)).

**III.     The New Jersey, Pennsylvania, and Puerto Rico cases _do_ involve direct discharger claims, have not fully resolved, and have resulted in protracted satellite litigation over the selection of bellwether sites.**

Defendants' preferred bellwether approach would force the State to prove its claim through numerous discovery phases and seriatim trials.  This approach is unfair, inefficient, and will not lead to a timely resolution of the case.  Contrary to Defendants' assertions, the New Jersey, Pennsylvania, and Puerto Rico cases do not support the Defendants' position:  they _do_ include direct discharger claims (which may have made a statewide approach less viable in those cases), they have _not_ resolved (which goes to their inefficiency), and they _have_ involved satellite litigation over the bellwether approach (which also speaks to inefficiency).  _Cf._ Defs. Br. at 22-27.

_**First,**_ the State here has never contended that the New Jersey, Pennsylvania, and Puerto Rico cases involved _**only**_ claims against Defendants as direct dischargers; rather, the State has pointed out that those cases _**included**_ claims against Defendants as direct dischargers.[11]  It thus proves nothing for Defendants to show that those cases also included claims against defendants as manufactures and suppliers.  The key point is that here the State is proceeding against defendants _**only**_ as manufacturers and suppliers, not as direct dischargers.  This distinction matters because the State's theory is that each Defendant's gasoline was commingled with the gasoline of every other Defendant at all MTBE sites throughout Rhode Island—obviating any need to trace MTBE at any site back to a particular source and from there to a particular Defendant.  State Br. at 1.  This fact is based upon expert testimony that was accepted by juries

---

[11] State Br. at 2-3 ("plaintiffs' claims _**include**_ a direct discharger theory of liability that lends itself to picking sites that 'belong' to each defendant") (emphasis added); _see also id._ at 21-22 ("New Jersey, Pennsylvania, and Puerto Rico are pursuing claims against defendants as direct dischargers of gasoline with MTBE, whereas Rhode Island (like New Hampshire) has proceeded against defendants _**solely**_ as manufacturers/suppliers.").

in the New York City and New Hampshire cases and by Judge Scheindlin on summary judgment in the Suffolk County case. *In re MTBE*, 725 F.3d at 116; *Exxon Mobil*, 126 A.3d at 293-94, 297-98; *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 591 F. Supp. 2d at 268-69. The situation is different where a defendant is alleged to be liable as a direct discharger, since the liability of a discharger necessarily depends on site-specific evidence correlating a discharge at a particular site to a particular owner or operator that discharged the gasoline. Since New Jersey, Pennsylvania, and Puerto Rico are proceeding against defendants as direct dischargers in addition to their other theories, it is unsurprising that they may be seeking to prove causation on a site-specific basis. *Cf.* Defs. Br. at 3.[12]

Defendants try to gloss over this key distinction by selective citation of the complaints in those cases to try to show that *some* of the claims in those cases are similar to the State's claims here. But Defendants then proceed to admit that plaintiffs in those cases are "pursuing certain defendants as owners and operators of gas station release sites." Defs. Br. at 26. As the defendants in the Pennsylvania case (again, largely the same group as defendants here) stated recently in a filing in that case, the "[p]laintiff is pursuing different claims, with different alleged injuries and categories of damages, against differently situated Defendants in this case." Defs. ltr. to Hon. Vernon S. Broderick at 2 in *Commonwealth of Pennsylvania v. Exxon Mobil Co.*, No. 1:14-cv-06228 (S.D.N.Y. July 8, 2020) (attached without exhibits as Exh. A). In the New Jersey case, the plaintiff is bringing claims under New Jersey's Spill Act under which it has sought to hold defendants liable as direct dischargers. State Br. at 15 n.8. Finally, Defendants admit that Puerto Rico is suing defendants as "owners and/or operators of gasoline facilities that have

---

[12] In its opening brief the State cited decisions from those cases demonstrating that they include direct discharger claims. State Br. at 15 n.8. Defendants are silent on these decisions.

released MTBE that contaminates waters of the Commonwealth."  Defs. Br. at 26 (citing Puerto Rico complaint).[13]  Here, however, all claims apply equally to all Defendants because the State is proceeding against them solely as manufacturers/suppliers.

*Second,* the site-specific approach used in the New Jersey, Pennsylvania, and Puerto Rico cases has proven inefficient.  State Br. at 15-17.  Defendants make a number of arguments to try to explain away the failure of these cases to come to a timely conclusion, but alleged counsel foot-dragging and purported court delays do not fully explain that those cases have been ongoing for 13 years (New Jersey, Puerto Rico) and 6 years (Pennsylvania).  State Br. at 22-24; *cf.* Defs. Br. at 4.  Defendants argue that the parties in New Jersey, Pennsylvania, and Puerto Rico "were remanded to and spent significant time in their original district courts," Defs. Br. at 4, but, in fact, the New Jersey case was only partially remanded, and the MDL court continues to oversee the non-bellwether sites.  *In re: Methyl Tertiary Butyl Ether* ("*MTBE*") *Prods. Liab. Litig.*, 2019 WL 4744250, at *1 (S.D.N.Y. Sept. 30, 2019).  Further, the MDL Court never remanded the Pennsylvania case.  Therefore, the number of years that those cases following a bellwether approach have been ongoing is not fully accounted for by proceedings on remand to their original district courts.

Defendants are also wrong to contend that the pace of the bellwether cases is "irrelevant to what happens here."  Defs. Br. at 24.  Defendants are advocating for the same bellwether approach here, and it is thus quite relevant whether the bellwether approach in those cases has led

---

[13] Defendants cite to a *different* case filed by Puerto Rico rather than the operative Third Amended Complaint for the original MTBE case Puerto Rico filed in 2007.  *See* Third Amended Complaint in *Commonwealth of Puerto Rico v. Shell Oil Co.*, No. 07 Civ. 10470 (S.D.N.Y. Dec. 3, 2012).  Puerto Rico in its Third Amended Complaint makes the same allegations against defendants as cited in Defendants' response.

to the "just, speedy, and inexpensive disposition of the action."  Fed. R. Civ. P. 16(c)(2)(A), (D), (P).  It has not and in fact the very opposite is the case.

Defendants point to the *Orange County Water District* case as their lead example of a case following a bellwether approach that is "well on [its] way to resolution," Defs. Br. at 23, but that case was filed in 2003, over 17 years ago.  *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 859 F.3d 178, 180 (2d Cir. 2017).  *Orange County Water District* offers a stark illustration of the failure of the bellwether approach, not a success.  And, like New Jersey, Pennsylvania, and Puerto Rico, OCWD is proceeding against defendants as direct dischargers, and not only as manufacturers/suppliers.[14]

**Third,** there has been protracted satellite litigation over the selection of bellwethers in the New Jersey, Pennsylvania, and Puerto Rico cases; Defendants are incorrect in contending otherwise.  For example, Defendants do not consider as satellite litigation the time that Pennsylvania "resisted efforts to implement the focus site approach for nearly three years," Defs. Br. at 24 n.17, but that is exactly the kind of delay that often results from a bellwether approach.  Litigation about whether to have one statewide trial or seriatim bellwether trials in the Pennsylvania case continues to this day, four years after Judge Scheindlin ordered the parties to meet and confer over selection of focus sites.  State Br. at 16.  Indeed, even after the bellwether approach was used for discovery, Pennsylvania recently stated to the court that defendants "improperly suggest that trial in this case will be limited to the initial focus sites.  This assertion

---

[14] *Id.* at 183 ("In its suit, the District alleges that following [prior] settlements, MTBE plumes have migrated from BP and Shell's stations toward the District's water production wells."); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 824 F. Supp. 2d 524, 529 (S.D.N.Y. 2011) (addressing OCWD claims against defendants that owned or leased gasoline stations).  Defendants also refer to an MTBE case by the City of Fresno, Defs. Br. at 14, 17, 26, but that plaintiff also targeted only certain defendants for certain sites.  *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 980 F. Supp. 2d 425, 429 & n.4 (S.D.N.Y. 2013).

is wrong.  The Commonwealth has opposed a focus site trial, and no decision as to the format of

trial in this matter has been made."  Letter from Tracey L. O'Reilly to Hon. Vernon S. Broderick

at 3 n.1, *Commonwealth of Pennsylvania v. Exxon Mobil Co.*, No. 1:14-cv-06228 (S.D.N.Y. July

15, 2020) (internal quotation marks and citation omitted) (attached as Exh. B).  In short, the

Pennsylvania, New Jersey and Puerto Rico cases are examples of why the Court should not

follow a focus site or bellwether case management approach.

**IV.      The State has proposed a reasonable pretrial schedule.**

Defendants raise various issues with the pretrial deadlines proposed by the State, but the

State has proposed a reasonable pretrial schedule that takes into account the substantial progress

in this case to date, and Defendants have not set forth any alternate full pretrial schedule at all.

The Court has not set any limitations on discovery to date, and both sides have engaged in

discovery regarding general issues and also specific sites.  It thus is reasonable for one additional

year of fact discovery and a trial to commence in two years.[15]  The State served discovery to the

Defendants in September 2019, and is continuing to meet and confer with Defendants about

deficiencies in Defendants' discovery responses.  Based upon those discussions, Defendants are

preparing supplemental responses and productions that the State expects to receive over the next

month.

Defendants opposed entry of a CMO in March 2019 because they did not yet have the

State's files on MTBE clean-up sites or MTBE drinking water detections.  The State produced

those materials, and since August 2019, Defendants have possessed the complete remediation

file for every MTBE site within the State, and only within the past week have requested access to

---

[15] The State's proposed CMO expressly acknowledges that "circumstances and events may
necessitate alterations to the discovery schedule," and thus already includes a mechanism to
address any delays occasioned by the ongoing pandemic.  *See* Proposed CMO § V.

certain Department of Health ("DOH") files for public water systems in the State even though the State has made these available since August 2019.  Defendants opposed entry of a CMO in October 2019, because they did not have a list of every known MTBE clean-up site.  The State subsequently produced this list yet Defendants still oppose entry of any meaningful CMO.  The State has responded to the Defendants' interrogatories and document requests, and sought to produce all responsive documents referencing MTBE within the files of DOH and the Department of Environmental Management.  The State has identified those individuals within the State's agencies most knowledgeable on the issues identified in Defendants' interrogatories. Accordingly, the discovery process is ongoing with the State having already produced over a million pages of documents and identified the most knowledgeable State employees so that Defendants may proceed with depositions if they wish.

With respect to expert discovery, the simultaneous exchange of expert reports is warranted because MTBE litigation is a mature tort; Defendants are familiar with which topics may require expert testimony from litigating MTBE cases over the last 17 years.

## V.    The State has valid claims for past costs.

The Court may enter a CMO without needing to address the Defendants' belated arguments on the merits that the State may not recover past costs.[16]  Defendants have made no motion, and the arguments are irrelevant to the State's CMO motion.  *See* Section I, *supra*.

---

[16] Defendants elected not to challenge past costs across the board in their prior motion to dismiss. Defendants challenged the recovery of past costs only under the Underground Storage Tank Financial Responsibility Act ("USTFRA") claim, which the Court dismissed because the "State asserts in this case exclusively its own rights, not the ones of its de facto insureds, and thus there can be no subrogation." *Atl. Richfield*, 357 F. Supp. 3d at 145.  Defendants never challenged the State's past damages under the Water Pollution Act or common law claims and they are thus incorrect that the State is somehow seeking to "revive" or "resurrect" claims and damages that have been in the case from the beginning.  *Cf.* Defs. Br. at 5, 8.

Defendants' arguments, additionally, are unfounded.  The State responds briefly here in order to demonstrate that delaying entry of a meaningful CMO with a detour into the merits is unwarranted; it reserves its right to respond in full if Defendants file a proper dispositive motion.

As set forth below, the USTFRA money collected by the State is—like any other state tax or fee—state property and is expended to clean up groundwater pollution from petroleum that constitutes a direct injury to the State itself.  The State is thus entitled to bring statutory and common law claims for these damages.  This is true regardless of whether the State may also have a subrogation claim against a third party that is liable to the owner or operator of the tank that released the gasoline and regardless of whether there even is such a third party situation.  The statutory scheme, like the similar schemes in state statutes across the country, was never meant to address a situation like this where gasoline refiners and suppliers deliver a product to the State that inevitably escapes into and harms the environment.  The New Hampshire Superior and Supreme Courts thus rejected Defendants' arguments based upon the existence of state funds and, upon a proper motion, this Court should do the same.

### A.  The State may recover MTBE past costs under the Water Pollution Act.

Defendants' arguments fail in the first instance because they are aimed only at the State's common law claims even though the State also has pleaded a claim under the state Water Pollution Act ("WPA") against Defendants, a claim this Court sustained in ruling on the motion to dismiss.  *Atl. Richfield*, 357 F. Supp. 3d at 146.  Under the WPA, "[a]ny person who shall negligently or intentionally pollute groundwater shall be liable to any other person who is damaged by that pollution."  R.I. Gen. Laws § 46-12-21.  The Attorney General, on behalf of the State, is expressly authorized to "institute civil or criminal proceedings for the violation of any provision of [the WPA]."  *Id.* § 46-12-16.  The WPA broadly provides that the State may seek

16

"any and all costs" caused by water pollution and that "[n]othing herein contained shall be construed" as limiting common law remedies. *Id.* § 46-12-13. Specifically, in "an action for enforcement," a court "may order any person to pay to the director any and all costs incurred in the investigation, cleanup, and restoration of areas affected by pollutants in connection with any violation." *Id.* The statute continues: "Nothing herein contained shall be construed to limit the amount of monetary relief which the court can award in any action brought pursuant to any other provision of the general laws or pursuant to common law." *Id.*

The State may recover past costs under this express language of the WPA, which Defendants do not even address. "'It is well settled that when the language of a statute is clear and unambiguous, [the] Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.'" *State v. Santos*, 870 A.2d 1029, 1032 (R.I. 2005) (quoting *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1226 (R.I. 1996)). In addition, "where the statute is remedial, one which affords a remedy, or improves or facilitates remedies already existing for the enforcement or rights of redress of wrongs, it is to be construed liberally." *Ayers-Schaffner v. Solomon*, 461 A.2d 396, 399 (R.I. 1983), *recognized as superseded on other grounds by statute in Lake v. State*, 507 A.2d 1349, 1352 (R.I. 1986). The State may seek "any and all costs" for MTBE contamination under the WPA. Defendants have failed to argue to the contrary and thus have utterly failed to establish a basis for delaying entry of a meaningful CMO.

**B. The State's common-law claims for past costs are not displaced by the USTFRA.**

Defendants propose a defense of statutory displacement of common law that is absent from their answers. Tellingly, given the importance Defendants now place on the issue, the vast majority of Defendants, including Exxon and CITGO, did not specifically plead the affirmative

defenses of displacement of state common law by state statute or remoteness in their answers, the two grounds on which they now seek to challenge the State's past costs, even though Exxon and CITGO, for example, pleaded 103 and 106 affirmative defenses, respectively.[17]  In any event, this newly discovered defense fails.

     *First*, Defendants do not even identify the controlling test for displacement of state common law by state statute.  The Rhode Island Supreme Court follows the "well-established rule that statutes that abrogate the common law must be strictly construed."  *Esposito v. O'Hair*, 886 A.2d 1197, 1203 (R.I. 2005).  Thus, "absent the express intent of the Legislature, a statutory enactment does not abrogate or supersede the common laws."  *State v. Pine*, 524 A.2d 1104, 1106-07 (R.I. 1987).  "It is settled in this jurisdiction that the courts will follow the common law to the extent that it remains applicable in given circumstances unless such law is modified by statute."  *Benevides v. Kelly*, 157 A.2d 821, 824 (R.I. 1960).  For these reasons, the "waiver of a common-law right inuring to the state, like the waiver of any other known right or privilege should not be lightly inferred."  *Andrade v. State*, 448 A.2d 1293, 1294 (R.I. 1982).  Defendants' own cases, *see* Defs. Br. at 8, recognize that statutes abrogating the common law are strictly construed.  *See Smith v. Tripp*, 14 R.I. 112, 115 (1883) ("when the statute provides a new remedy for an existing common law right or liability, there the new remedy is cumulative only, unless the common law remedy is excluded in express terms or by clear intendment"); *see also Hinck v. United States*, 550 U.S. 501, 506 (2007) (the "remedy provided is generally regarded as

---

[17] *See* Answer to Plaintiff's Complaint of Exxon Mobil Corporation, ExxonMobil Oil Corporation, and Mobil Corporation, ECF No. 148, at 71-90; Defendants CITGO Petroleum Corporation's, CITGO Refining and Chemicals Company L.P.'s and PDV Midwest Refining, L.L.C.'s Answers and Affirmative Defenses to Plaintiff's Complaint, ECF No. 151 at 114-29.

exclusive" only when "Congress enacts a specific remedy *when no remedy was previously recognized*") (emphasis added).

**Second,** under this controlling test, the USTFRA does not expressly abrogate the common law.  The USTFRA provides that "[n]othing contained in this chapter shall be construed to prevent subrogation by the state of Rhode Island against any responsible party, other than the owner and/or operator, for all sums of money that the fund shall be obligated to pay hereunder, plus reasonable attorneys' fees and costs of litigation and such right of subrogation is hereby created."  R.I. Gen. Laws § 46-12.9-5(b)(4).  Defendants argue that this language implicitly displaces any other remedies the State may have for MTBE past costs, but the statute's plain language merely makes clear that the statute does not displace the very subrogation remedy against any party (other than an owner or operator) that it creates; it says nothing about displacement of existing common law remedies.  Nor does the statute provide that the USTFRA remedy is exclusive.  There is thus no "express intent" to abrogate the common law.  *Pine*, 524 A.2d at 1106–07.

**Third,** in New Hampshire's MTBE case, the New Hampshire trial and supreme courts rejected similar arguments about past costs.  Prior to trial, New Hampshire filed a motion in limine to exclude, under the collateral source rule, evidence that its past damages consisted of monies expended from the statutory underground storage tank petroleum clean-up funds (which had been collected from petroleum suppliers, including some of the defendants).  Order on State's Motions in Limine to Exclude Evidence and Argument that the State Received Compensation for its Injury from Collateral Sources at 1 in *State of New Hampshire v. Hess Corp.*, No. 03-C-550 (N.H. Super. Ct. Jan. 4, 2013) (attached as Exh. C).  The Superior Court granted the motion because "Defendants' fee contributions to the [funds] were more like fringe

benefits or social programs than insurance against future liability because the Funds contemplate expenditures by third parties" including "UST owners." *Id.* at 7.  Undaunted, defendants moved for reconsideration and, in addition, had repackaged their argument in a summary judgment motion contending that "the State suffered no past damages" because it had collected money from these statutory funds.  The trial court recognized that New Hampshire's "past expenditures have been funded by the [statutory funds]" but adhered to its ruling that these funds are a collateral source.  Order on Defendants' Motion to Reconsider This Court's Order on State's Motion in Limine to Exclude Evidence and Argument that the State Received Compensation for Its Injury from Collateral Sources and Order on Defendants' Motion for Summary Judgment on Plaintiff's Claims for Past and Future Costs ("Past Cost Order") at 9 in *State of New Hampshire v. Hess Corp.*, No. 03-C-550 (N.H. Super. Ct. Jan. 11, 2013) (attached as Exh. D).  It also denied the summary judgment motion on past costs because "this would be like a driver in an auto accident case arguing the plaintiff was not harmed because his/her insurance premiums paid for any damages sustained" and "this argument directly raises the argument the collateral source rule is intended to preclude." *Id*. at 12.  At trial, the jury awarded New Hampshire $142 million for past cleanup costs. *Exxon Mobil*, 126 A.3d at 275.  On appeal, the New Hampshire Supreme Court again rejected Exxon's argument that the state statutory funds provided the exclusive remedy to address cleanup of petroleum contamination: "We agree with the trial court that there is no language in either of the statutory provisions establishing the [petroleum clean-up] Funds indicating a legislative intent to preclude the damages sought by the State in this case." *Id.* at 278.  The same is true here.

**Fourth,** the State's past costs are a readily cognizable form of damages under its common-law claims.  The State's groundwater at the known MTBE sites already has been

contaminated by MTBE.  "Damages" denote a "sum of money awarded to a person injured by the tort of another."  *See* Restatement (Second) of Torts § 902.  "Generally speaking, the end of tort damages is to restore the aggrieved party to the position he would have occupied had the tort not occurred."  *Prob. Court of City of Warwick ex rel. Lawton v. Bank of Am., N.A.*, 813 F. Supp. 2d 277, 323 (D.R.I. 2011); *see also Plummer v. Abbott Labs.*, 568 F. Supp. 920, 922 (D.R.I. 1983) ("Tort damages are awarded in order fully and adequately to compensate an individual for injuries sustained.").  The State is entitled to seek the full amount of damages to clean up MTBE at the known sites and wells, including past costs.[18]

  **Fifth,** Defendants rely upon cases, *see* Defs. Br. at 8, addressing whether a statute that created a "new right" or a "new duty" that did not exist at common law also created a private right of action in favor of a private individual.  *See Grant v. Slater Mill & Power Co.*, 14 R.I. 380, 387 (1884) ("It was no part of the scheme of this act to create any duty which was to become the subject of an action at the suit of individuals, and that, therefore, no remedy for individuals, beyond that which is expressly given, should be implied for any mere neglect of the duties imposed by the act.") (internal quotation marks omitted); *Godding v. Pierce*, 13 R.I. 532, 533 (1882) (right of attachment "is not a common law right [but] is created by statute" and so plaintiff was "confined to the remedy at law, whether adequate or not, because it and it only is the remedy which is given him by the statute"); *cf. Vandal v. Geo. T. McLauthlin Co.*, 132 F. Supp. 279, 281 (D. Mass. 1955) (*Grant* "merely hold[s] that building laws create no private

---

[18] *See* R.I. Gen. Laws § 46-12-13 (authorizing recovery of "restoration" costs related to water pollution); *id.* § 46-13.1-2(1) (State commitment to "restore, enhance, and maintain the chemical, physical, and biological integrity of its waters"); *Morabit v. Hoag*, 80 A.3d 1, 17 (R.I. 2013) (where damaged property has unique value the cost of restoration is the measure of damages); R.I. Gen. Law. § 46-13.1-2(1) (groundwater is "invaluable natural resource"); *id.* § 46-13.1-2(2) ("groundwaters of this state are a critical renewable resource which must be protected to insure the availability of safe and potable drinking water for present and future needs").

causes of action in certain circumstances."). But here, the State's common-law claims seeking past costs do not depend upon whether a "new right is created or a new duty imposed by statute." *Cf. Grant*, 14 R.I. at 383. Rather, the State's common-law claims exist separate and apart from the USTFRA and do not seek to infer a cause of action from the statute. Nor does the State's case, brought in its sovereign and *parens patriae* capacities on behalf of the public, depend upon any implied rights of action in favor of private individuals.

Defendants' new argument of statutory displacement with respect to past costs fails to establish any basis to delay entry of a meaningful CMO.

### C. The State's claims for past costs are not barred by remoteness.

Defendants' remoteness argument fares no better. The owners and operators of tanks that leaked are not the true victims in this case; it is the "waters in which [the State] has an interest" that is injured, *Atl. Richfield*, 357 F. Supp. 3d at 136, and the State is thus directly harmed. Moreover, the monies in the USTFRA fund are the State's property, just like any other tax or fee collected by the State. Accordingly, the State did spend *its own money* from the fund, and Defendants thus may not benefit from the fact that the State obtained the money from a statutory fund. *Esposito*, 886 A.2d at 1199 ("The collateral source rule is a well-established principal of Rhode Island law.") (internal quotation marks omitted). Defendants' new argument that payments to clean up MTBE gasoline pollution from the funds are "equivalent to an insurer's payment under an insurance policy," Defs. Br. at 10, simply repackages with a new name an argument that must be analyzed under the collateral source rule. Indeed, insurance is the quintessential collateral source from which a defendant may not benefit and thus the Defendants' "remoteness" argument analogizing the funds to insurance is quite revealing. As noted above, in the New Hampshire MTBE case, defendants similarly argued on summary judgment that New

Hampshire could not recover past costs because it "has not been injured,"[19] but the court held that "this argument directly raises the argument the collateral source rule is intended to preclude."  Past Cost Order at 12.  The same is true here.

Defendants' cases on remoteness are not on point because the State has been directly injured by contamination of "waters in which it has an interest," *Atl. Richfield*, 357 F. Supp. 3d at 136, and thus there is no "wrong plaintiff" problem here.  *See Rhode Island Laborers' Health & Welfare Fund ex rel. Trs. v. Philip Morris, Inc.*, 99 F. Supp. 2d 174, 179 (D.R.I. 2000) (lawsuit by medical benefits provider who suffered *derivative* financial loss as a result of injury to third-party smokers: "the Fund is not the proper plaintiff to seek redress for the tobacco companies' wrongdoing under RICO because its injuries are derivative, and too remote."); *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268-69, 274 (1992) ("plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover" and such persons were "not proper plaintiffs"); *State v. Lead Indus. Ass'n*, 2001 R.I. Super. LEXIS 37, at *46 (R.I. Super. Ct. Apr. 2, 2001) (injuries "contingent on direct or speculative harm" to third parties and thus are "too derivative, remote, or contingent").  The State's claims are for injuries to itself, not derivative of injuries to third parties, and so Defendants' cases are not on point.  Remoteness is no bar.

## CONCLUSION

The State respectfully requests that the Court enter its proposed CMO consistent with the statewide approach.

August 14, 2020                              Respectfully submitted,


                                             /s/  Neil F.X. Kelly

---

[19] Past Cost Order at 10.

Neil F.X. Kelly, Assistant Attorney General and
Deputy Chief of the Civil Division (Bar No. 4515)
DEPARTMENT OF THE ATTORNEY GENERAL
150 South Main Street
Providence, RI  02903
(401) 274-4400 ext. 2284
nkelly@riag.ri.gov

Carla Burke Pickrel (admitted *pro hac vice*)
M. Cristina Sanchez (admitted *pro hac vice*)
BARON & BUDD, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, TX  75219
(214) 521-3605
cburkepickrel@baronbudd.com
csanchez@baronbudd.com

Matthew F. Pawa (admitted *pro hac vice*)
Benjamin A. Krass (admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1280 Centre Street, Suite 230
Newton Centre, MA  02459
(617) 641-9550
mattp@hbsslaw.com
benk@hbsslaw.com

William A. Walsh (admitted *pro hac vice*)
WEITZ & LUXENBERG, P.C.
700 Broadway
New York, NY   10003
wwalsh@weitzlux.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 14, 2020 I caused a copy of the foregoing to be filed electron-ically via the Court's CM/ECF system.  Those attorneys who are registered CM/ECF users may access these filings, and notice of these filings will be sent to those parties by operation of the CM/ECF system.

*/s/ Neil F. X. Kelly*