# EXHIBIT C

## STATE OF NEW HAMPSHIRE

## SUPERIOR COURT

MERRIMACK, SS. 03-CV-0550

### STATE OF NEW HAMPSHIRE

v.

### HESS CORPORATION,

et al.

### ORDER ON STATE'S MOTIONS IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENT THAT THE STATE RECEIVED COMPENSATION FOR ITS INJURY FROM COLLATERAL SOURCES [1368]

The State has brought a motion *in limine*, asserting that Defendants are not entitled to present evidence regarding State receipt of funds from the Oil Discharge and Disposal ("ODD" codified at RSA 146-D) and Gasoline Remediation and Elimination of Ethers ("GREE" codified at RSA 146-G) Funds (together "Funds") because: (1) the collateral source rule prohibits such evidence; and (2) even if this evidence were relevant, it is highly prejudicial and confusing to a jury. Defendants assert this evidence is relevant and admissible because: (1) these Funds are not collateral sources; (2) the Defendants, not taxpayers, paid into these Funds; (3) the State itself must present evidence regarding Fund payments to establish its damages; and (4) this evidence undermines the State's arguments about widespread MTBE contamination because the State has failed to exhaust the Funds year after year and in fact proposed lapsing the GREE Fund to pay for more general oil remediation rather than for MTBE remediation.

The first step in evaluating this motion is to determine whether the challenged evidence or testimony is relevant pursuant to New Hampshire Rule of Evidence 401.

From there, some evidence might be relevant but also prejudicial to one of the parties. If so, the evidence's relevance must be weighed against its prejudice, and evidence that is unduly prejudicial, confusing, or repetitive will be excluded, despite its relevance. N.H. R. Ev. 403.

"The collateral source rule is a substantive rule of law that states that a tortfeasor's liability is not reduced even though the tort victim has received benefits for the same injury from collateral or independent sources." In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig. (Yosemite Springs Park Utility Co. v. Chevron U.S.A., Inc.), No. 09–cv–1419 at *2 (S.D.N.Y. Dec. 6, 2011) (hereinafter "Yosemite Springs").[1] "Under the collateral source rule if a plaintiff is compensated in whole or in part for his damages by some source independent of the tortfeasor he is still permitted to make full recovery against him." Moulton v. Groveton Papers Co., 114 N.H. 505, 509 (1974). "The rationale for the rule arose out of concern that allowing the introduction of collateral sources of income would influence juries in their determination of a tortfeasor's liability. The collateral source rule addresses this potential bias and effectively forces the tortfeasor to absorb the total cost of the resulting harm." King v. New York, No. 06 Civ. 6516(SAS) at *1 (S.D.N.Y. June 13, 2007).[2] The main argument against application of the collateral source rule is that it unfairly charges defendants with the cost of double recovery of the plaintiff and can often offer a plaintiff a windfall or substantially more than the amount needed to make a plaintiff whole. Moulton, 114 N.H. at 510.

In determining whether a source is collateral, courts focus on the intent of the fund provider and whether the fund is independent:

---

[1] 2011 WL 6096934.
[2] 2007 WL 1711769.

2

> Where the defendant itself has provided an independent benefit to the plaintiff, the rationale for the collateral source rule fades, and the concern about a double recovery becomes more concrete. Accordingly, the court must scrutinize the defendant's intent in providing such benefits. If the defendant provided the benefit with the intent of offsetting tort liability, the collateral source rule does not apply, either as a substantive rule or as a rule of evidence. By contrast, if the defendant provided the benefit without the intent to offset tort liability, the collateral source rule does apply, and the defendant will get no offset credit. In sum, where the defendant is the source of an independent benefit, the collateral source rule applies unless that benefit was provided by the defendant as a tortfeasor.

Yosemite Springs, No. 09–cv–1419 at *2 (emphasis added); see Sloas v. CSX Transp. Inc., 616 F.3d 380, 390 (4th Cir. 2010); Phillips v. Western Co. of N. Am., 953 F.2d 923, 932 (5th Cir. 1992); Smith v. United States, 587 F.2d 1013, 1016 (3d. Cir. 1978) (finding where a fund has the aspect of social insurance it is collateral); United States v. Price, 288 F.2d 448, 449 (4th Cir. 1961);[3] Toro v. Sanchez, 141 F. Supp. 2d 195, 199 (D.P.R. 2001); Brown v. United States, 615 F. Supp. 391, 399 (D. Mass. 1985). Thus, in this case, there are two key issues with respect to the collateral source rule. First, the Court must determine whether the collateral source rule applies to the ODD and GREE funds the State has already expended for MTBE remediation. If the collateral source rule applies, then Defendants are not entitled to an offset credit based on their contribution to those Funds.

Turning now to the first issue, "[i]n this jurisdiction, it has been held that a tort defendant can derive no benefit from the fact that the plaintiff was insured (Rolfe v. Boston & M. R.R., 69 N.H. 476 [(1899)]), or that his bills have been paid by a fireman's

---

[3]
> There may be some variations among different jurisdictions, depending perhaps upon the exact nature of the compensation received, but the broad rule seems to be that where the plaintiff receives from the tortfeasor payments specifically to compensate him for his injury, the tortfeasor need not pay twice for the same damage, and therefore such compensation payments should be taken into account in fixing tort damages.

Id. (emphasis added).

3

relief association (Clough v. Schwartz, 94 N.H. 138 [(1946)])[,] or that he has received workmen's compensation (Abbott v. Hayes, 92 N.H. 126 [(1942)]), or retirement benefits. Descoteau v. Boston & Maine R.R., 101 N.H. 271, 278 (1958)." Bell v. Primeau, 104 N.H. 227, 228 (1962). Because the Funds at issue in this case do not fit squarely into any of these categories, the Court must evaluate the purpose and effect of the ODD and GREE Funds.

The U.S. Environmental Protection Agency ("EPA") requires that underground storage tank ("UST") owners demonstrate their ability to pay cleanup costs and compensate third parties for releases of petroleum products resulting from their USTs. See 40 C.F.R. § 280.93 (2012). New Hampshire's ODD Fund is an EPA-approved program that assures such compliance. The ODD Fund operates as excess insurance for any UST owner who (1) is in compliance with federal and New Hampshire law and any relevant regulations, and (2) owes damages for a petroleum release that exceeds the policy limits of its private insurance. RSA 146-D:6, I. In two circumstances such an owner can receive reimbursements from the ODD Fund: (1) for "the costs of onsite and off-site cleanup of oil discharges"; and (2) for "court-ordered damages to third parties for bodily injury or property damage". RSA 146-D:6, III. The ODD Fund is financed by a fee on imported oil that is paid on a per gallon basis by distributors who import oil into New Hampshire. RSA 146-D:2–3. The parties agree that Defendants contributed to the ODD Fund although neither party has provided a precise or estimated figure. The ODD Fund's purpose:

> [I]s to establish financial responsibility for the cleanup of oil discharge and disposal, and to establish a fund to be used in addressing the costs incurred by the owners of underground storage facilities and bulk storage facilities for the cleanup of oil discharge and disposal, to protect

4

groundwater, and for reimbursement for third party damages. An additional purpose is to provide a funding source for cleanup and reimbursement for discharges of gasoline ethers pursuant to RSA 146-G.

RSA 146-D:1. In this way, the end goal of the ODD Fund is not to offset tort liability for Defendants but rather to provide an excess insurance mechanism for UST owners who are otherwise in compliance with all relevant laws and rules.

The GREE Fund is financed in part by the ODD Fund. RSA 146-D:3, IV(b); RSA 146-G:1. The GREE Fund may be "used to provide financial reimbursement to owners of public and private water supplies for the treatment and removal of gasoline ethers and associated contaminants when present with those ethers from those supplies[,]" RSA 146-G:1, II, which the State has interpreted to refer to: (1) owners of property contaminated by MTBE; and (2) owners of public and private water supplies contaminated by ethers. The GREE Fund's purpose:

> [I]s to provide procedures that will expedite the cleanup of gasoline ether spillage, mitigate the adverse affects of gasoline ether discharges, encourage preventive measures, impose a fee upon importers of neat gasoline ethers into the state and establish a fund for the remediation of groundwater and surface water contaminated by gasoline ethers.

RSA 146-G:1, II.

Thus, although both Funds provide a benefit to the State, Defendants' contributions to the Funds does not offset their future tort liability. These Funds were established for public policy purposes, largely to protect the public health and resources. Accordingly, these Funds fall within the collateral source rule.

Because the collateral source rule applies, Defendants are not entitled to offset any liability they might be found to have in this case from their contributions to the Funds. Defendants' reliance on the New Hampshire Supreme Court's ruling in Moulton

5

v. Groveton Papers Co., 114 N.H. 505 (1974), is misplaced. In Moulton, Nash Pond Dam failed and damaged several bridges in the Town of Stark. The defendant owned and operated the Dam. Id. at 506. Although the State fully compensated the Town for repair of its main bridge, the Town had been using two smaller temporary bridges provided by State while construction of the primary bridge was underway. The Town then needed to replace the two supporting bridges. The State had not agreed to compensate the Town for those bridges and had not agreed to build them, but the State could have provided funds for the construction of those bridges. For this and other reasons, the trial judge transferred three questions to the Supreme Court for interlocutory appeal; the relevant question to this case was whether the collateral source rule should apply to limit any damages the Town would otherwise be awarded from the defendant tortfeasor. The Court ruled that the defendant's liability was limited to any payment it did not or would not receive from the State. Id. at 511. In so ruling, the Court assumed that the State would not seek subordination if it did provide funding and the defendant was later found liable for the cost of the two new bridges. The Court ruled:

> [A]ssuming liability on the part of the defendant, the town of Stark will be 'limited to a recovery from the Defendants of any damages for which it has not or will not receive payment from the State of New Hampshire under Chapter 428 of the laws of 1969 or any other statute.'

Id. at 511. Defendants assert that this holding prohibits the State in this case from recovering from Defendants for ODD and GREE funds the Defendants have already paid. The Court disagrees.

Nothing in Moulton abrogates the traditional collateral source rule that prohibits admission of evidence of a plaintiff's collateral funding source because those Funds are

6

irrelevant to defendant's liability. See e.g., Clausen v. Sea-3, Inc., 21 F.3d 1181, 1192–193 (1st Cir. 1994) (citing Moulton in discussing the majority collateral source rule). Where the collateral source rule applies, defendants may not present evidence of the collateral source, and they are not entitled to an offset for these payments. Yosemite Springs, No. 09–cv–1419 at *2. Although this rule may appear on its face to permit double recovery by a plaintiff from a defendant, the defendant's intent in making such payments governs whether the funds can be considered in offsetting any future liability. Id. In this case, Defendants' fee contributions to the ODD and GREE Funds were more like fringe benefits or social programs than insurance against future liability because the Funds contemplate expenditure by third parties—UST owners with respect to the ODD Fund and private and public water suppliers with respect to the GREE Fund.

Further, the legislature intended that any funds expended pursuant to the ODD and GREE would be recoverable by the State. See RSA 146-D:6, IX; RSA 146-G:3; RSA 146-A:9. As such, the Moulton situation, where the Supreme Court assumed the State would not exercise any rights of subrogation, does not apply here.

Finally, Defendants argue that because the State intends to present evidence of the Funds in order to prove its past damages, Defendants should be entitled to, in essence, complete the picture for the jury. Although the State's expert Gerry Beckett's opinion relies on past expenditures from the ODD and GREE Funds in calculating the State's past and projected future costs of MTBE remediation, the State has agreed that it will "refer to its expenditures without referring to the source," and it asks that Defendants be similarly limited. State's Reply 6. Because the collateral source rule recognizes that the prejudice of evidence of a collateral source outweighs its probative

7

value, Cyr v. J.I. Case Co., 139 N.H. 193, 196 (1994), the Court agrees that both parties should be precluded from discussing the Funds or Defendants' contribution to them. The State's motion is GRANTED.

So Ordered.

<u>   1-4-13   </u>
Date

Peter H. Fauver
Presiding Justice

8