# EXHIBIT D

STATE OF NEW HAMPSHIRE

SUPERIOR COURT

MERRIMACK, SS.                                                03-CV-0550

STATE OF NEW HAMPSHIRE

v.

HESS CORPORATION,

et al.


ORDER ON DEFENDANTS' MOTION TO RECONSIDER
THIS COURT'S ORDER ON STATE'S MOTION IN LIMINE TO EXCLUDE
EVIDENCE AND ARGUMENT THAT THE STATE RECEIVED COMPENSATION FOR
ITS INJURY FROM COLLATERAL SOURCES and ORDER ON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS FOR PAST AND
FUTURE COSTS [1735, 1086]


On January 7, 2013, this Court ruled on the State's motion *in limine*, finding that

Defendants are not entitled to present evidence regarding State receipt of funds from

the Oil Discharge and Disposal ("ODD" codified at RSA 146-D) and Gasoline

Remediation and Elimination of Ethers ("GREE" codified at RSA 146-G) Funds

(together "Funds"). Defendants have since moved to reconsider and/or clarify that

Order. The State responded, and the Court heard argument on January 11, 2013. In

addition, there is one outstanding related motion: Defendants' Motion for Summary

Judgment on Plaintiff's Claims for Past and Future Costs. The Court will first address

the motion to reconsider, as its basis largely disposes of the motion for summary

judgment.

**Motion to Reconsider**

In ruling on a motion to reconsider, the Court must determine whether it has overlooked or misapprehended any points of law or fact. See Super. Ct. R. 59-A (1); see also Farris v. Daigle, 139 N.H. 453, 455 (1995). Defendants make several arguments that the January 7, 2013 Order contains errors of fact and law, but these arguments can be grouped into two main categories: (1) the Court erred in terming ODD and GREE Funds collateral; and (2) even if the Funds are collateral, the Court erred by failing to consider the many relevant permissible uses the Fund evidence may nonetheless have and weighing the prejudice and probative nature of such evidence under New Hampshire Rule of Evidence 403. The Court will address each in turn.

Collateral Source

Defendants' challenge to this Court's interpretation of the collateral source rule as applied in New Hampshire raises no issues of law or fact the Court misapprehended or overlooked. Defendants claim this Court misread— In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig. (Yosemite Springs Park Utility Co. v. Chevron U.S.A., Inc.), No. 09–cv–1419 (S.D.N.Y. Dec. 6, 2011) (hereinafter "Yosemite Springs")[1]—a case on which it relied with similar facts and outcome based on California law in two ways: (1) Defendants argue the Court misconstrued the outcome of that case; and (2) Defendants assert that California law on the collateral source rule includes consideration of the intent of the payer of the collateral source but New Hampshire does not recognize this "intent requirement." The Court disagrees with both contentions.

New Hampshire law on the collateral source rule does not explicitly adopt the "intent requirement." However, this requirement, as noted in the January 7, 2013 order, is widely applied, and even if the facts and law underlying the Yosemite Springs case

---

[1] 2011 WL 6096934.

2

cannot be said to apply here, as the parties strenuously debate, numerous other jurisdictions consider the intent of the fund payer and the nature of the compensation in addition to the source when determining whether funds constitute a collateral source. See Sloas v. CSX Transp. Inc., 616 F.3d 380, 390 (4th Cir. 2010); Phillips v. Western Co. of N. Am., 953 F.2d 923, 932 (5th Cir. 1992); Smith v. United States, 587 F.2d 1013, 1016 (3d. Cir. 1978) (finding where a fund has the aspect of social insurance it is collateral); United States v. Price, 288 F.2d 448, 449 (4th Cir. 1961); In re Vulcan Materials Co., 674 F. Supp. 2d 756, 771 (E.D. Va. 2009); Toro v. Sanchez, 141 F. Supp. 2d 195, 199 (D.P.R. 2001); Brown v. United States, 615 F. Supp. 391, 399 (D. Mass. 1985).

The mere fact that compensation comes from a tortfeasor does not preclude the possibility that it is from a collateral source; this is ultimately determined by examining the nature of the compensation. Determining the nature of the compensation in this case required evaluating the purpose of the Funds more than just the identity of the payer. This Court already engaged in such an analysis, and the Court's application of the collateral rule is consistent with New Hampshire law. See Bell v. Primeau, 104 N.H. 227, 228 (1962) (discussing New Hampshire cases on collateral source).

Finally, Defendants argue the Court's consideration of the subrogation aspects of the ODD and GREE Funds was inaccurate and wrongly factored into the Court's decision that the Funds constitute collateral sources. Even assuming the Court should not have considered the subrogation aspect or that its analysis was not accurate, the subrogation component of the ODD and GREE Funds was not a substantial factor in this Court's analysis regarding the collateral nature of the Funds. Therefore, the Court

3

did not misapprehend the facts or misapply any law in ruling that the ODD and GREE Funds constitute collateral sources.

<u>Permissible Uses Despite Collateral Source</u>

Nonetheless, Defendants argue the Court failed to properly evaluate whether, the ODD and GREE Funds are relevant for other purposes and to clearly delineate the permissible uses of such evidence. The Court agrees that the parties and the Court would benefit from further elucidation of the appropriate use of any evidence regarding these Funds.

Preliminarily, the Court notes there are four generally accepted non-collateral-source uses of collateral-source evidence: (1) Impeaching the credibility of the plaintiff or the plaintiff's witnesses on damages; (2) Showing an incentive for the injured party to malinger or, as defense attorneys like to claim, for secondary gain; (3) Showing that the injured party has been compensated fully for the harm in a different action; and (4) The injured party has opened the door by testifying that he or she received no compensation during the period of absence from work, was too poor to get medical treatment, returned to work as soon as he or she was able because of financial needs, and other such things. <u>See e.g.</u>, <u>Rolanti v. Boston Edison Corp.</u>, 603 N.E.2d 211, 218 (Mass. App. Ct. 1992); <u>Gurliacci v. Mayer</u>, 590 A.2d 914, 928–29 (Conn. 1991).

At argument today, Defendants highlighted several example uses of evidence of the ODD and GREE Funds that Defendants argue are appropriate permissible uses. Defendants did not categorize these uses, but for analysis, the Court will. The first use was for rebutting arguments Defendants believe the State will make that it would have done more to characterize and treat MTBE contamination if it had more funding

4

available. The Court terms this the "damages impeachment use." Defendants also seek to use Fund evidence to refute argument and testimony the State may admit regarding the nature of the MTBE crisis in New Hampshire. Defendants offered some examples of letters written by former governor Jeanne Shaheen and former DES Commissioner Robert Varney. Defendants argue the Shaheen letter effectively admits that the State believed it appropriately and fully addressed MTBE contamination through administration of the ODD and GREE Funds, and Defendants seek to use this letter to refute the State's contention that MTBE contamination is widespread and unresolved. The Court terms this use "general impeachment use." Defendants also seek to use Fund evidence to refute any impression the jury may obtain that their tax dollars paid for the State's past damages and will be used to fund future damages if Defendants are not found liable. The Court terms this the "juror impression use."

With respect to the damages impeachment use, although this use is generally permitted as an exception to the bar on collateral source evidence, it is not appropriate in this case. To determine whether evidence that might be relevant despite the collateral source rule should nonetheless be excluded, New Hampshire courts weigh the prejudice and relevance of the evidence pursuant to New Hampshire Rule of Evidence 403. The New Hampshire Supreme Court explained the potential for prejudice with respect to the collateral source rule in Cyr v. J.I. Case Co., 139 N.H. 193, 196 (1994): "On the other side of the Rule 403 balance, we find a serious danger of unfair prejudice, confusion of the issues, and misleading the jury." In Cyr, the trial court permitted the defendant to admit evidence of workers compensation benefits paid to the plaintiff for the purpose of showing plaintiff's incentive to malinger, so the facts of the case are

distinguishable from this one. Id. Nonetheless, the Supreme Court's explanation of the potential for prejudice is key to this Court's evaluation of the Defendant's purported use.

> Evidence of collateral source benefits may lead the jury to believe that the plaintiff is trying to obtain a double or triple payment for one injury, or to believe that compensation already received is sufficient recompense. Despite assertions that collateral source evidence is needed to rebut or impeach, there generally will be other evidence having more probative value and involving less likelihood of prejudice than the victim's receipt of insurance-type benefits.

Id. at 197 (quoting Gormley v. GTE Products Corp., 587 So.2d 455, 458 (Fla.1991)).

Applying this test with respect to Defendant's purported "damages impeachment use," Defendants argue they are entitled to present evidence of the State's receipt of funds to prove its damages figure is too high and to rebut arguments State witnesses may make that the reason certain cleanup efforts were not undertaken but should be undertaken in the future was because of lack of funding in the past. This evidence is unduly prejudicial for three reasons: (1) it is minimally relevant; (2) it is highly confusing and time consuming to present such evidence; and (3) there are other ways for Defendants to make this argument.

First, assuming this evidence was admitted, the Court envisions Defendants would show the ODD and GREE Funds exist—or a source of funding existed—and the State should have withdrawn every possible cent from this to remediate MTBE. Every cent the State did not expend should be deducted from its damage award now. This evidentiary use of collateral source evidence would put the Funds directly at issue and the actual relevance of that evidence is slight. This analysis would necessarily open the door to the State refuting such evidence by showing the Funds have caps, how much certain remedial measure would cost, how much money the State did or could have

6

expended from the Funds in any given year. The State would necessarily put forward witnesses and evidence to show why DES made the spending decisions it did and compare those decisions to the decisions it would have made with more funding. The ODD Fund, for example, is capped by law at $10 million. This means, in any given year, the State could spend up to $10 million for oil spill cleanup costs throughout New Hampshire—not just MTBE cleanup costs. The GREE Fund is capped at $2.5 million. So, at the end of any discussion of the ODD and GREE Funds, the actual value of money disputed would be very small in comparison to the amount of money this case involves. The Court does not mean to suggest that a million dollar figure is insignificant to a jury or to the parties in this case. However, the State will necessarily argue in rebuttal to Defendants claims that the size of the Funds pales in comparison to the approximately $800 million problem, as claimed by the State.

Second, such an explanation can become very confusing very quickly. The nature of the ODD Fund and the GREE Funds differ. There are two caps per statute and the funding totals differ. For example, the ODD Fund caps individual payments for any one site to $1.5 million. RSA 146-D:6, III. There are other limitations on State expenditures of these Funds, by identity of the recipient and triggering event. Each Fund has a sunset provision at which time the entire Fund may expire, and a juror might be asked to consider whether these Funds would even be available for future remediation after 2015. So in addition to minimal relevance in terms of dollar value, this evidence has a high likelihood of confusing the jury, and to properly explain all the minutia of each Fund, the parties could spend days presenting testimony and eventually wasting time.

Third, the use for which Defendants seek to offer ODD and GREE Fund availability is inappropriate because there are other means of undermining the State's damages figure. Defendants assert this evidence is appropriate for impeaching the State's damages value. Defendants are certainly entitled to challenge the State's damages value based on whether it is reasonable. However, Defendants have several avenues for making such a challenge, including: undermining the State's expert testimony, challenging the State's decision to close remediation sites before the State had conducted all remediation efforts it believed necessary; that private well owners might not participate in the State's testing and treatment program; and that it might be impossible for the State to test all of the wells it believes are in use because the State does not know the physical address for all private wells in New Hampshire.

Defendants' purported use is highly prejudicial because it raises the heart of the collateral source rule; the idea that the plaintiff received money from collateral sources, so it should not be seeking damages from the liable tortfeasor. This use also creates substantial confusion of the issues in this case; the existence of these Funds and whether the State spent them is irrelevant to the Defendants' liability. Finally, this use, due to the minimal relevance, could constitute a substantial waste of time. Accordingly, the prejudice associated with this use substantially outweighs the minimal relevance the evidence may have. As such, this use is precluded.

As to Defendants' "general impeachment use," Defendants argue they can present evidence tending to show the nature of MTBE contamination in the State is not as the State argues it is. This use is relevant and permissible. However, Defendants explain that to prove this point, they must admit evidence of letters that refer to the ODD

and GREE Funds. The Court has viewed two example documents and is confident the letters can be redacted in such a way that the Funds are not mentioned but the point of the letters remains the same. To the extent Defendants intend to use documents that refer to the ODD and GREE Fund in order to prove such argument, those documents are to be redacted and presented to the Court for prior approval.

As to Defendants' "jury impression use," Defendants may offer a limited statement qualifying only the nature of the State's past expenditures. Defendants argue that if this Court excludes any mention of the ODD or GREE Funds, the jury will be left with the wrong impression the State has used and will use general revenue funds paid by taxpayers in order to remediate MTBE contamination if the jury does not find Defendants liable. The Court agrees to a limited extent.

The State's past expenditures have funded by the ODD and GREE Funds, and Defendants may explain the jurors, in their capacity as taxpayers, did not contribute to the money the State spent in the past for remediating MTBE contamination. However, in so explaining, Defendants may not reference the ODD and GREE Funds or any "Fund." Rather, Defendants may simply explain the remediation efforts were not sponsored by taxpayer dollars. However, with respect to future payments, both parties agree the future existence of the ODD and GREE Funds and the State's ability to draw from them is highly speculative. The Funds could expire in 2015, and the State would be required to raise revenue for MTBE remediation in another way. Accordingly, with respect to future expenditures, there shall be no reference to the Funds or whether future remediation efforts will be funded by taxpayer dollars.

Finally, consistent with <u>Cyr</u>, any mention of collateral source funds is considered reversible error as to liability, regardless of which party "opens the door." 139 N.H. 197–98. Accordingly, the State is instructed to tread carefully. Defendant's Motion to Reconsider is GRANTED in part and DENIED in part, consistent with the above analysis.

Also, the Court deferred ruling on three demonstrative power point slides Defendants had proposed to use in their opening argument set for Monday January 14, 2013. Consistent with the Court's ruling on the motion to reconsider, Defendants may not use "Defense Opening" slides 60, 61, or 62 in their current form.

**Motion for Summary Judgment**

In December 2011, Defendants moved for summary judgment asking the Court to rule as a matter of law that the State cannot recover past and future costs for MTBE-related investigative and remedial activities because license fees assessed on the importation of gasoline products have funded and will continue to fund such work, so Defendants argue the State has not been injured. The State argues: (1) Defendants seek to relitigate this Court's prior dismissal of their counterclaims requesting a setoff; (2) Defendants argument ignores the New Hampshire Supreme Court's decision recognizing that future testing and treatment costs are appropriate damages for the State to recover in its *parens patriae* capacity; (3) the collateral source rule applies to the ODD and GREE Funds; and (4) once the State receives oil import fees, they become State funds, so the State spent its own funds and it is injured.

10

In order to prevail on summary judgment, the moving party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RSA 491:8-a, III. Neither party raises any disputed facts with respect to this motion, so the Court addresses the motion only as a matter of law. Dividing the Defendants' motion by past and future costs, the Court will first address Defendant's motion on future costs.

Future Costs

This Court and the New Hampshire Supreme Court have already ruled the State is entitled to seek recovery for future testing and treatment costs in its *parens patriae* capacity. State v. Hess Corp., 161 N.H. 426, 434 (2011); June 13, 2011, Order on the Defendants' Motion for Partial Summary Judgment on Claims for Private Damages. "[A] state may act as the representative of its citizens where the injury alleged affects the general population of a State in a substantial way." State v. Hess Corp., 161 N.H. at 434 (citation and quotation omitted). "[T]he fact that MTBE is detected in a privately owned well does not necessarily preclude the State from pursuing damages for the costs of investigating, monitoring, treating, remediating, replacing, or otherwise restoring such wells." Id. at 437 (emphasis added). To the extent the Supreme Court couched its ruling on the outcome of further determinations to be made by this Court, this Court has made those determinations. For example, although the Supreme Court instructed this Court to "give especially close scrutiny to the State's request for "[p]resent and future private well and non-public water system costs" at any level[,]" id. at 439, this Court has carefully

11

scrutinized the nature of the damages the State seeks in multiple motions and has determined they are supported by the States evidence offered to date.[2]

Additionally, this Court has considered and dismissed counterclaims based on the argument Defendants raise regarding future testing and treatment costs. Thus, based on this Court's previous rulings that the State has *parens patriae* standing to recover past and future costs, the Defendants have not carried their burden of showing they are entitled to judgment as a matter of law on the State's future testing and treatment costs.

Past Costs

With regard to Defendant's motion for summary judgment as to past costs, Defendants assert that the State suffered no past damages because it had two sources from which to draw funds to remediate MTBE contamination. Considering this argument in hypothetical form, this would be like a driver in an auto accident case arguing the plaintiff was not harmed because his/her insurance premiums paid for any damages sustained. Although, as discussed above, this case differs substantially from the typical collateral source case, this argument directly raises the argument the collateral source rule is intended to preclude.

Defendants' argument is further based on the notion that because the Funds the State expended were intended to remediate oil contamination, the State suffered no legally recognizable injury. However, the basis for the State's damages claim against Defendants is wholly unrelated to the ODD and GREE funds. The State's claims arise from contamination of the State's water resources. The ability to make ones self whole

---

[2] Order on Defendants' Renewed Motion for Partial Summary Judgment on Claims for Private Damages (Sept. 26, 2012); Order on the Defendants' Motion for Partial Summary Judgment on Claims for Private Damages (June 13, 2011).

does not mean the injury did not occur in the first place. See Corsetti v. Stone Co., 483 N.E.2d 793, 80910 (Mass. 1985); Goldstein v. Gontarz, 309 N.E.2d 196, 203 (Mass. 1974).

Defendants have failed to show they are entitled to judgment as a matter of law for the State's past costs. The Defendant's Motion for Summary Judgment is DENIED.

So Ordered.

_____1/11/13_____
Date

Peter H. Fauver
Presiding Justice