UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                  )
STATE OF RHODE ISLAND,            )
                                  )
          Plaintiff,              )       C.A. No. 17-204 WES
                                  )
     v.                           )
                                  )
ATLANTIC RICHFIELD COMPANY,       )
et al.,                           )
                                  )
          Defendants.             )
_____)

## MEMORANDUM AND ORDER

Before the Court is Defendants' Motion for Partial Summary Judgment on Plaintiff's Claim for Amounts Paid Out of the UST Fund, ECF No. 213. For the reasons that follow, Defendants' Motion is DENIED.

I.  BACKGROUND

The State alleges that for decades Defendants manufactured and distributed gasoline containing methyl tertiary butyl ether ("MTBE") across Rhode Island, all the while hiding their knowledge of the chemical's detrimental effects. See Rhode Island v. Atl. Richfield Co., 357 F. Supp. 3d 129, 133-35 (D.R.I. 2018). Per the State's allegations, once introduced into the gasoline supply, MTBE was bound to leak into the groundwater of Rhode Island. See Compl. ¶ 27, ECF No. 1-1. Furthermore, the State asserts that MTBE is pernicious and unusually difficult to remediate. See id. ¶ 43. Thus, since the outset of this litigation, the State's

theory of liability has been clear:  Defendants injured the State by polluting Rhode Island's groundwater.

Nonetheless, the State's proposed method for calculating damages was not sketched out until discovery recently sputtered to a start.  We now know that the State seeks to establish Defendants' liability for MBTE contamination at approximately 616 sites at which gasoline leaks have occurred.  See Mem. of Law in Supp. of State's Mot. for Entry of Case Management Order 11, ECF No. 207-2.  Importantly, cleanup has already been completed at around 523 of those sites.  See id.  Furthermore, the State seeks to quantify its injury partly based on the costs of the past and future cleanups at those 616 locations.  See id.; see also State's Brief in Opp'n to Defs.' Mot. for Partial Summ. J. ("State's Opp'n to Summ. J.") 15-16, ECF No. 219.

II.  LEGAL STANDARD

Per the usual test, summary judgment will be granted if, "viewing the facts in the light most favorable to the non-moving party[,] . . . there is 'no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Mass. Delivery Ass'n v. Healey, 821 F.3d 187, 191 (1st Cir. 2016) (quoting Fed. R. Civ. P. 56(a)) (citation omitted).

Unlike the usual scenario, though, discovery here has only just begun.  Thus, the State's ability to muster the requisite evidence is yet unknown.  Nonetheless, Defendants' Motion is ripe

for decision because it raises questions that are almost purely legal in nature.  See Defs.' Statement of Undisputed Facts ¶¶ 1-8, ECF No. 213-2 (relying on statutes and regulations as basis for undisputed facts); State's Opp'n to Summ. J. 8-10.[1]

III. DISCUSSION

Defendants argue that, as a matter of law, they bear no liability for remediation at the 523 sites where cleanup has already been completed because the costs of those cleanups were paid by storage tank owners and operators, who, in turn, were partially reimbursed through Rhode Island's Underground Storage Tank Fund ("UST Fund" or "Fund").  See Defs.' Mem. of Law in Supp. of Their Mot. for Partial Summ. J. on the State's Claim for Amounts Paid Out of the UST Fund ("Defs.' Summ. J. Mem.") 1-3, ECF No. 213-1.  Thus, for purposes of this decision, all roads lead back to the legislation that created the Fund:  the Underground Storage Tank Financial Responsibility Act ("USTFRA" or "Act").  See R.I. Gen. Laws § 46-12.9-2.

Under the USTFRA, gasoline distributors must collect from storage tank owners and operators a fee of one-half cent for each gallon of gasoline delivered, to be remitted to the State and

---

[1] The quibbles over the assertions in Defendants' Statement of Undisputed Facts, see Pl.'s Statement of Disputed Facts, ECF No. 219-1, along with the contention that the Statement of Undisputed Facts should not have been submitted in the first place, see State's Opp'n to Summ. J. 8-10, are not addressed here, as they have no bearing on the questions raised by Defendants' Motion.

placed in the UST Fund.  R.I. Gen. Laws § 46-12.9-11(a), (b).  Fee collection pauses whenever the Fund reaches a balance of $8 million and resumes once the balance dips down to $5 million.  Id. § 46-12.9-11(c).  Each time gasoline leaks from an underground storage tank in Rhode Island, the private entity responsible for the tank is required to conduct a cleanup.  See 250 R.I. Code R. 140-25-1.8.  The Rhode Island Department of Environmental Management ("DEM") has the authority to investigate the leak and compel various cleanup measures to be taken.  See id.  After cleanup is finished, the responsible private entity is entitled to reimbursement from the UST Fund for eligible cleanup expenses, after a $20,000 deductible, up to $1 million per incident (or $2 million in the aggregate).  R.I. Gen. Laws § 46-12.9-5(b).

One of the Complaint's nine counts alleges that Defendants bear liability under the USTFRA directly.  See Compl. ¶¶ 284-88.  However, the USTFRA contemplates a cause of action for the State only in two specific scenarios.  First, the State may sue a responsible party that fails to comply with a DEM cleanup order.  R.I. Gen. Laws § 46-12.9-5(b)(3).  Second, the State can step into the subrogated shoes of the owners/operators to obtain compensation from any responsible parties other than owners and operators.  Id. § 46-12.9-5(b)(4).  Previously, the Court determined that the State's theory of USTFRA liability did not fall within either category because there was no allegation of a

4

failure to comply with a DEM order and because the State asserted its own rights, not the subrogated rights of third parties.  Atl. Richfield, 357 F. Supp. 3d at 145.  Thus, the Court dismissed the USTFRA count.  Id.

Seeking to multiply the effect of that dismissal, Defendants now contend that the State's asserted injury (in all seven remaining counts) at the 523 already-remediated sites is the diminution of the UST Fund that occurred through reimbursement of cleanup costs.  See Defs.' Summ. J. Mem. 12-13.  With the demise of the USTFRA theory of liability, Defendants argue, the State's hopes of collecting damages relating to those reimbursements died as well.  See id. at 10.

But this argument conflates injury and damages.  The injury alleged in the State's surviving counts (unlike the dismissed USTFRA count) is not the diminution of the Fund.  Rather, the injury is the pollution of the groundwater of the Ocean State. The payments from the UST Fund are merely one of the footings on which the State will attempt to quantify that injury in dollars and cents.[2]  As will be illustrated, this simple distinction soundly defeats all of Defendants' arguments for partial summary judgment.

---

[2] The Court expresses no view regarding whether, assuming the State proves liability, the State will be able to establish that UST Fund payments are a useful starting point for calculating damages.

A.   Subrogation

Defendants first argue that the State's damages theory is barred because the USTFRA provides the exclusive remedies for leaks from underground storage tank systems.  See Defs.' Summ. J. Mem. 9-12.  Specifically, Defendants emphasize that the only avenue for relief here would have been for the State to sue responsible parties other than storage tank owners and operators via subrogation.  See id.

As Defendants note, "when the General Assembly creates a new statutory right or liability . . . and provides for a specific remedy for any violations of that right, a party aggrieved by the exercise of that newly created right is bound to follow the statutorily specified remedy."  Root v. Providence Water Supply Bd., 850 A.2d 94, 103 (R.I. 2004) (citing Smith v. Tripp, 14 R.I. 112, 114-15 (1883)); see also Defs.' Summ. J. Mem. 10-11.  In accordance with that rule, the Court dismissed the USTFRA as a cause of action because the State's claim did not comport with either of the two remedies provided by the Act.  See Atl. Richfield, 357 F. Supp. 3d at 145.

However, that rule is good only as far as it goes.  Root does not say that pre-existing causes of action are displaced simply because they bear some similarity to a newly created statutory right.  See 850 A.2d at 103.  Here, the State's remaining causes of action - strict liability for design defect and/or defective

6

product, strict liability for failure to warn, negligence, public nuisance, private nuisance, trespass, and violation of the Water Pollution Act – all predate the USTFRA.  See Compl. 54-75, 78-79; see also Atl. Richfield, 357 F. Supp. 3d at 147 (dismissing counts pled under the public trust doctrine and the USTFRA); R.I. Gen. Laws §§ 46-12-1, et seq. ("Water Pollution Act", enacted in 1920). The injury alleged in those counts is not the money paid out of the Fund.  Rather, the State claims it was directly harmed by the release of a noxious chemical into its groundwater.  Thus, Defendants' invocation of this rule of exclusive statutory remedy is a red herring.

Instead, the relevant precept is "that absent the express intent of the Legislature, a statutory enactment does not abrogate or supersede the common laws."  State v. Pine, 524 A.2d 1104, 1106-07 (R.I. 1987) (citation omitted).  To the extent Defendants argue that the USTFRA abrogated the remaining common law and statutory causes of action in the Complaint, the Court is not convinced. See Defs.' Summ. J. Mem. 10-11.  First of all, the Court need not answer the question of whether the USTFRA abrogated existing remedies for run-of-the-mill gas spills, as the State does not fault Defendants for the mere fact that gasoline leaks have occurred in Rhode Island.  Instead, the State asserts that Defendants engaged in a decades-long practice of bringing MTBE into Rhode Island, knowingly or negligently exposing the State to

a persistent and pervasive contaminant.  Per the State's theory, the General Assembly could not have predicted or accounted for the deleterious effects of MTBE-laced gasoline – which exceed those of MTBE-free gasoline - when it enacted the USTFRA.  Compl. ¶¶ 109-126, 170-76, 185.  Accordingly, the Court rejects the contention that the USTFRA contains the exclusive remedies for injuries caused by MTBE in gasoline leaks.

B.   Whether the State's Damages Theory is Cognizable in Tort

Next, Defendants try a variation on the same theme, arguing that the State's common-law claims fail with regard to sites where cleanup is complete because "Fund payments are not tort damages caused by a tortious injury to the State."  Defs.' Summ. J. Mem. 12.  To support their view that the State does not have a viable theory of direct harm (as opposed to indirect financial harm), Defendants point to the Court's dismissal of the count brought under the public trust doctrine.  Id. at 13 (citing Atl. Richfield, 357 F. Supp. 3d at 147).

However, notwithstanding the dismissal of the public trust claim, various other common-law claims live on.  Moreover, those surviving claims plausibly allege a direct injury to the State. See Atl. Richfield, 357 F. Supp. 3d at 136 ("The State's allegation that waters in which it has an interest have been polluted by a possible human carcinogen due to Defendants['] activities pleads a plausible injury in fact." (citation omitted)); id. at 137 ("The

8

State's allegations concerning MTBE's behavior once in the ground — specifically its tendency to mix with water and its resistance to biodegradation — plausibly demonstrate that further injury from the chemical is certainly impending." (citation omitted)); id. at 142 ("Insofar as the State used or consumed gasoline containing MTBE, it has the same right as a private party to be warned by sellers of their products' reasonably foreseeable dangers." (citation omitted)); id. ("Widespread water pollution is indeed a quintessential public nuisance." (citation omitted)).

As explained, the fact that the State seeks to use cleanup costs as a means of estimating damages does not mean that the Fund's reimbursements for those costs are the alleged injury. They are not. Thus, Defendants' assertion that the Fund payments are not cognizable in tort attacks a straw man.

C.   Remoteness

Relatedly, Defendants argue that the financial harms to the State are too remote to be compensable. See Defs.' Summ. J. Mem. 14-19. In support, Defendants point to cases in which courts have held that health care funds cannot recover smoking-related treatment costs from tobacco companies because the connection between those costs and the alleged tortious behavior is too remote. See, e.g., R.I. Laborers' Health & Welfare Fund ex rel. Trustees v. Philip Morris, Inc., 99 F. Supp. 2d 174, 176, 179 (D.R.I. 2000) (citing Holmes v. Secs. Inv'r Protec. Corp., 503

9

U.S. 258, 274 (1992)); see also State v. Lead Ind. Assn., 99-5226, 2001 WL 345830, at *1, 13-14 (R.I. Super. Apr. 2, 2001) (holding that state's claims against defendants who allegedly concealed evidence regarding dangers of lead were barred by remoteness doctrine because the direct injury was inflicted on individuals, not the state). But those cases are easily distinguishable. There, the direct injury was borne by the individuals who suffered smoking-related illnesses, not by the health care funds that paid to treat those ailments. See, e.g., R.I. Laborers' Health & Welfare Fund, 99 F. Supp. 2d at 179. Here, conversely, the Complaint plausibly alleges that the State has suffered a direct injury through widespread pollution. See Atl. Richfield, 357 F. Supp. 3d at 136. Thus, the State's attempt to establish liability at the 523 closed sites is not impaired by remoteness.

D.   Water Pollution Act

Defendants also take aim at the State's claim under the Water Pollution Act ("WPA"), R.I. Gen. Laws §§ 46-12-1 to -41. This argument is tripartite: First, the only entities that can be held liable under the WPA are those that directly discharge pollutants; second, the only direct dischargers involved here are owners and operators; and third, recovery from owners and operators would contravene the exclusivity of the subrogation remedy set out in the USTFRA. See Defs.' Summ. J. Mem. 19-21. Having already rejected the argument that the USTFRA's statutory remedies

constrain the State's remaining causes of action, the Court need not delve into the additional legal and factual matters raised by Defendants' argument. Judgment cannot enter on the WPA allegations at this stage.

E.   Collateral Source Doctrine

Lastly, the parties argue about whether the collateral source doctrine governs the issue of past costs. See Defs.' Summ. J. Mem. 21-23; State's Opp'n to Summ. J. 16-19. However, the applicability or inapplicability of that rule is not offered by Defendants as a basis for partial summary judgment. See Defs.' Summ. J. Mem. 21-23. Rather, the doctrine is presented by the State as a rejoinder to Defendants' Motion. State's Opp'n to Summ. J. 16-19. Having concluded on other grounds that Defendants' bid to limit the scope of the case must be denied, the Court need not resolve the dispute over the collateral source rule.

IV. CONCLUSION

For the reasons stated herein, Defendants' Motion for Partial Summary Judgment on Plaintiff's Claim for Amounts Paid Out of the UST Fund, ECF No. 213, is DENIED.

IT IS SO ORDERED.

William E. Smith
District Judge
Date:  May 24, 2021

11