UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF RHODE ISLAND, | : |
| Plaintiff, | : |
| vs. | : 1:17-cv-00204-WES-PAS |
| ATLANTIC RICHFIELD COMPANY, et al., | : |
| Defendants. | : |

**CONSENT JUDGMENT AS AMONG PLAINTIFF AND DEFENDANTS
BP PRODUCTS NORTH AMERICA INC. AND ATLANTIC RICHFIELD COMPANY**

## INTRODUCTION

WHEREAS, Plaintiff, the State of Rhode Island (the "State"), acting by and through the Attorney General, Peter F. Neronha, filed the Complaint in this matter against Defendants BP Products North America Inc. and Atlantic Richfield Company ("BP Defendants") in Rhode Island Superior Court, Providence County; and

WHEREAS, on May 11, 2017, the defendants removed the Litigation, originally brought in Rhode Island Superior Court, Providence County, to the United States District Court, District of Rhode Island; and

WHEREAS, the State's Complaint alleged that in addition to manufacturing and/or supplying MTBE or gasoline containing MTBE for sale within the State, BP Defendants promoted, marketed, distributed, supplied, and sold MTBE, gasoline, and other petroleum products (collectively referred to as "gasoline") containing MTBE, when BP Defendants knew or reasonably should have known that MTBE would be released into the environment and cause MTBE and/or TBA contamination of property, water, water supplies, and wells throughout the State in violation of federal and state law; and

WHEREAS, the State's Complaint also alleged that BP Defendants are liable for polluting groundwater as prohibited by R.I. Gen. Laws §§ 46-12-5 and 46-12-21; liable for reimbursing the State's expenditures related to MTBE contamination, per 42 U.S.C. § 6991b, R.I. Gen. Laws § 46-12.9-5, and any other applicable provisions; strictly liable for manufacturing and supplying a defective product; strictly liable for failing to provide adequate warnings in connection with that product; liable for negligently causing damage to the property and waters of the State and to the property of citizens of the State; liable for creating a public nuisance; liable for creating a private nuisance; liable for trespass upon the waters of the State and upon property of the State and citizens

of the State; liable for unreasonably interfering with the use and enjoyment of public trust resources; liable as co-conspirators with other defendants; and liable for all resulting damages; and

WHEREAS, the State's Complaint seeks injunctive and equitable relief to abate the alleged continuing nuisance and trespass by removing MTBE from soil and groundwater; and

WHEREAS, the State's Complaint seeks restitution, remediation and compensatory and punitive damages arising from MTBE contamination of natural resources, public trust resources, groundwater, release sites, public drinking water supply wells, private drinking water supply wells, and other State and public properties and waters; and

WHEREAS, the State and BP Defendants have reached an agreement to resolve all of the State's claims against BP Defendants (this "Agreement"); and

WHEREAS, the State and BP Defendants desire to resolve finally and fully all claims that have been, could have been, or hereafter could be asserted against BP Defendants by the State on its own behalf or in any other capacity, including as trustee of natural resources or as *parens patriae*, arising out of the design, manufacture, marketing, distribution, supply, sale, handling, spillage, release, and/or storage of MTBE and/or gasoline containing MTBE, without the necessity of further expense of prolonged and complex litigation, and without admission, adjudication or determination of any issue of fact or law other than has already been adjudicated by the Court in this Litigation; and

WHEREAS, BP Defendants enter into this Consent Judgment without admitting the facts or allegations set forth herein or in the Complaint, except as provided in Section III (Jurisdiction and Venue) and as necessary for purpose of the entry or enforcement of this Consent Judgment, and expressly denies any and all liability associated with or related to the Litigation and the Released Claims and believes it has good and valid defenses to all of the State's claims; and

WHEREAS, the State and BP Defendants agree that the settlement of this matter has been negotiated in good faith and at arm's length, that implementation of the Consent Judgment is consistent with the goals of the state and federal laws as referenced above, is in the public interest, and is an appropriate means to resolve this case.

NOW, THEREFORE, based on the Motion for Entry of this Consent Judgment and once the Consent Judgment is entered, the State and BP Defendants will file a Joint Stipulation of Dismissal with Prejudice before taking any testimony and without the adjudication of any issue of fact or law except as provided in Section III (Jurisdiction and Venue), it is **ADJUDGED, ORDERED, AND DECREED**, as follows:

## I. DEFINITIONS

1. Whenever the following terms are used in this Consent Judgment, the definition specified hereafter shall apply:

(a) "Attorney General" shall mean the Rhode Island Office of the Attorney General.

(b) "State" shall mean the State of Rhode Island.

(c) "Complaint" or "Litigation" shall mean *State of Rhode Island v. Atlantic Richfield Co., et al.*, originally brought on April 26, 2017 in Rhode Island Superior Court, Providence County, and removed on May 11, 2017 to the United States District Court, District of Rhode Island;

(d) "Day" shall mean a calendar day.

(e) "BP Defendants" shall mean BP Products North America Inc. and Atlantic Richfield Company.

(f) "Business Day" shall mean a day other than a Saturday, Sunday, or a State or federal holiday.

(g) "Effective Date" shall mean the date that this Consent Judgment is entered as a final judgment by the United States District Court for the District of Rhode Island.

(h) "MTBE" means methyl tertiary butyl ether, tert-butyl alcohol ("TBA") and any other associated breakdown products of the compounds, impurities or trace chemicals contained in these products.

(i) "Paragraph" shall mean a portion of this Consent Judgment identified by an Arabic numeral.

(j) "Parties" (and individually referred to as a "Party") shall mean the Plaintiff State and Defendants BP Products North America Inc. and Atlantic Richfield Company.

(k) "Released Claims" means any and all legal claims, demands, actions, causes of action, suits, obligations, assessments, damages, injunctive or other equitable relief, declaratory relief, liabilities, judgments, penalties, remedies of any kind, rights, matters, liens, losses, duties, investigation costs, response costs, restoration costs, natural resource damages, and assertion of entitlement to any other cost, loss or expense, including without limitation attorneys' fees, expert witness fees, consultant fees, interest, and any other litigation-related fees and costs of every kind, nature, description, or character whatsoever, whether legal or equitable, past, present, or future, ascertained or unascertained, known or unknown, suspected or unsuspected, arising under State or federal statute, regulation or common law, or in equity, that the State asserted or could have asserted in this Litigation, or could assert in the future against BP Defendants, including but not limited to direct claims, *parens patriae* claims, and/or assigned claims, arising from: 1) the use of MTBE in gasoline at any time and for any reason; 2) the design,

testing, manufacture, refining, blending, handling, use, promotion, marketing, exchange, import, distribution, supply, sale, branding, storage, and/or other use of MTBE or gasoline containing MTBE, including all warnings or other communications relating to the marketing, use, sale, and supply of MTBE as a gasoline component or additive; and/or 3) the actual, potential or threatened presence of or contamination from MTBE, at any concentration level, in the soil and/or in the waters of Rhode Island, whether surface or subsurface waters and whether or not accessed or accessible in the past, present or future by wells or other intakes, or in any other medium located anywhere, except as provided in Section VIII.

(l) "Section" shall mean a portion of this Consent Judgment identified by a Roman numeral.

(m) "Subparagraph" means a portion of this Consent Judgment identified by a lowercase letter.

## II.   STATEMENT OF PURPOSE

2.   This Consent Judgment is a compromise that fully and finally settles, releases, and forever discharges, with prejudice, the Released Claims between the Parties including their current, former and future (direct and indirect) parents, affiliated, related, subsidiary, predecessor and successor companies, joint venture companies, and partnerships, trusts and other entities, together with each of the foregoing entities' current and former respective directors, officers, partners, members, shareholders, officials, trustees, beneficiaries, employees, agents, affiliates, attorneys, insurance carriers and reinsurers and all successors and assigns. By entering this Consent Judgment, the mutual objective of the Parties is for BP Defendants to make one cash payment, pursuant to Section V, the sufficiency of which

is hereby acknowledged and in consideration of the mutual promises, obligations and commitments set forth below, to resolve BP Defendants' alleged liability for compensatory, punitive, and any other damages arising from MTBE contamination, and to resolve all other claims in the Complaint, subject to the Reservation of Rights in Section VIII.

### III.    JURISDICTION AND VENUE

3.    This Court has jurisdiction over the subject matter of this action pursuant to the authority of Section 1503 of the Energy Policy Act of 2005 and 28 U.S.C. §§ 1331, 1441(a) and 1446. The Parties consent to and shall not challenge the entry of this Consent Judgment or this Court's jurisdiction to enter and enforce this Consent Judgment.

### IV.    PARTIES BOUND

4.    This Consent Judgment applies to and is binding upon the Parties.

### V.    PAYMENT BY DEFENDANT

5.    BP Defendants have agreed to pay to the State the sum of $205,000.00 (the "Settlement Payment"), to resolve all of the Released Claims. Within thirty (30) Business Days after the Effective Date of this Consent Judgment, BP Defendants shall pay the Settlement Payment, by check or wire transfer to "Baron & Budd, P.C., in Trust and Settlement of Case State of Rhode Island v. Atlantic Richfield et al. C.A. No. 1:17-cv-00204 WES-PAS." Baron & Budd, P.C. will deduct its fees from the payment and deliver the net amount due via check made payable to the R.I. Department of Environmental Management (RI DEM), Environmental Response Fund, receipt restricted account ("Designated Fund") and shall be delivered to:

> Mary Kay
> Chief Legal Counsel
> Rhode Island Department of Environmental Management
> 235 Promenade Street

Providence, RI 02908-5767
Reference: State v. Atlantic Richfield
(BP Defendants Settlement)

## VI.  THE STATE'S OBLIGATIONS WITH RESPECT TO THE PAYMENT

6. The portion of the Settlement Payment paid to the Designated Fund shall be deposited in an interest-bearing account and held in that account in escrow until the "Joint Stipulation of Dismissal With Prejudice" is entered by the United States District Court, District of Rhode Island, after which the proceeds shall be deposited into the Environmental Response Fund receipt restricted account with the RI DEM to be used solely to fund water remediation and restoration projects in Rhode Island and the legal and administrative costs associated with these projects pursuant to the Consent Judgment. The settlement proceeds paid by BP Defendants to Baron & Budd, P.C. and delivered by Baron & Budd, P.C. to RI DEM pursuant to this Consent Judgment may not be borrowed or used for any other purposes other than as specified in this Paragraph. The Rhode Island Attorney General has responsibility to oversee the distribution and use of the settlement proceeds to ensure that distribution and use are consistent with the terms of the settlement and of this Consent Judgment. Within two (2) business days after BP Defendants have made the payment referenced in Section V, the Parties shall execute and file with the Court to enter the Joint Stipulation of Dismissal With Prejudice in the form annexed hereto as Exhibit A.

## VII.  EFFECT OF SETTLEMENT / CONSENT JUDGMENT

7. Nothing in this Consent Judgment shall be construed to create any rights in, or grant any cause of action to, any person or governmental entity not a party to this Consent Judgment. The Parties expressly reserve any and all rights, defenses, claims, demands, and

causes of action, which they may have with respect to any matter, transaction, or occurrence relating in any way to the Complaint against any person or governmental entity not a Party hereto. This Agreement is a compromise of disputed claims that fully and finally settles all claims in the Litigation by the State against the Defendant as well as all of the Released Claims, as set forth above. Neither the provision of any consideration hereunder nor anything contained in this Consent Judgment shall be interpreted or construed to be an admission of liability, or any fact or point of law on the part of, or to the prejudice of, the Parties to this Consent Judgment. The Defendant expressly denies any and all liability associated with or related to the Litigation and the Released Claims. The Defendants believe they have good and valid defenses to all of the State's claims but wish to resolve this lawsuit and claims to avoid the costs, expense, and uncertainty inherent in the Litigation.

8.    Upon compliance with the requirements of Section V (Payment by BP Defendants), and except as provided in Section VIII (Reservation of Rights), this Consent Judgment shall resolve the alleged liability of BP Defendants for all claims alleged against BP Defendants in the State's Complaint.

9.    Upon compliance with the requirements of Section V (Payment by BP Defendants), and except as provided in Section VIII (Reservation of Rights), this Consent Judgment shall fully and finally settle, release, and forever discharge, with prejudice, the Released Claims between the State and these Defendants including their current, former and future (direct and indirect) parents, affiliated, related, subsidiary, predecessor and successor companies, joint venture companies, and partnerships, trusts and other entities, together with each of the foregoing entities' current and former respective directors, officers, partners,

members, shareholders, officials, trustees, beneficiaries, employees, agents, affiliates, attorneys, insurance carriers and reinsurers and all successors and assigns.

10. The release contained in this Agreement is given in good faith by the State to BP Defendants and, subject to Section VIII, discharges BP Defendants from all liability for contribution in the Litigation to the fullest extent provided by law.

## VIII. RESERVATION OF RIGHTS

11. The Released Claims do not include such matters arising on account of MTBE or gasoline containing MTBE, if any, that BP Defendants, after the date of this Agreement, may (i) design, test, manufacture, refine, or blend or (ii) market, handle, sell, exchange, import, or distribute into or within the State.

12. Notwithstanding any provision to the contrary herein, the Released Claims are not intended, and shall not be construed, to include or limit in any way the State's right to sue to compel, or take administrative action to compel, BP Defendants to respond to any spill, release, or discharge, or to bear the costs of such response, from a facility directly owned or operated by BP Defendants at the time any spill, release, or discharge occurred. For purposes of this Agreement, the mere franchising or branding of a third party by a Defendant or presence of a Defendant's gasoline at a third party's facility shall not constitute direct ownership or operation by a Defendant.

13. Nothing in this Consent Judgment is intended to affect in any way these Defendants' obligations, if any, with respect to performance of any investigation, testing, monitoring, treatment, remediation, and/or other restoration otherwise required of these Defendants by the RI DEM, such as initial site characterization, site investigation, initial response action, interim response action, periodic sampling, remedial investigation, identification of

constituents of concern, feasibility study, remedy selection, remedial action, implementation of an activity and use restriction, and/or implementation of corrective action, with respect to regulated contaminants or hazardous waste, regardless of the presence or absence of MTBE, at any facility directly owned or operated by BP Defendants at the time any spill, release, or discharge occurred. To the extent that BP Defendants possessed any claims against the State arising from and directly related to the Released Claims that were existing and could have been brought in the Litigation, BP Defendants releases all such claims, including any claims for attorneys' fees, payments, and other costs arising from said claims or the resolution of such claims.

## IX.   MISCELLANEOUS

14. In the event that either Party takes action to enforce the terms of this Consent Judgment, that Party shall be entitled to recover all reasonable expenses, including reasonable attorneys' fees and costs, incurred in enforcing this Consent Judgment from the Party against whom it seeks enforcement if such enforcement action is successful.

15. Each Party agrees to take any such actions as may be reasonably required to carry out the terms of this Consent Judgment.

16. The titles in this Consent Judgment have no independent legal significance and are merely used for the convenience of the Parties.

17. In computing any period of time under this Consent Judgment, where the last day would fall on a Saturday, Sunday, or State or Federal holiday, the period shall run until the close of business of the next Business Day.

18. The Parties individually represent that they have not sold, assigned, conveyed, disposed of, granted a security interest in or lien on, or otherwise transferred any claim purported to be released by this Consent Judgment.

19. The State acknowledges and agrees that neither this Consent Judgment, nor any document delivered hereunder, is intended to be or shall be construed as or deemed to be evidence of any alleged liability or wrongdoing by BP Defendants. Defendant expressly denies any and all liability associated with or related to the Released Claims.

20. The State and BP Defendants acknowledge and agree that this Consent Judgment, along with all related drafts, motions, court papers, conversations, negotiations and correspondence, the payment by BP Defendants, and all statements made in connection with the negotiation of this Agreement, constitute an offer to compromise and a compromise within the meaning of Federal Rule of Evidence 408, and any equivalent code or common law rule of evidence of any state.

21. The Parties agree that they will not offer the Consent Judgment, any document or instrument delivered hereunder, or any statement, transaction or proceeding in connection with the negotiation, execution or implementation of the Consent Judgment, as evidence in this or any other proceeding for any purpose, except in (i) a proceeding the sole purpose of which is to enforce the terms of the Consent Judgment, (ii) any proceeding to establish an insurance or reinsurance claim by BP Defendants, (iii) a proceeding to establish an appropriate set-off or credit to a judgment entered or to be entered in favor of the State against an entity other than BP Defendants, or (iv) any other proceeding where such admission is necessary to effectuate the terms of the Consent Judgment.

22.     For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), all amounts paid under Paragraph 5 of this Consent Judgment are for restitution, remediation, or are required for Defendants to come into compliance with law, as described in Section VI above.

## X.   RETENTION OF JURISDICTION

23.     The Court shall retain jurisdiction to modify and/or enforce the terms and conditions of this Consent Judgment and to resolve disputes arising hereunder as may be necessary and appropriate for the construction or execution of the Consent Judgment.

## XI.   INTEGRATION

24.     This Consent Judgment constitutes the final, complete and exclusive understanding among the Parties with respect to the settlement agreement embodied in the Consent Judgment. The Parties expressly acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Judgment.

## XII.   SIGNATORIES

25.     The undersigned representatives of the Parties each certify that he or she is fully authorized to enter into the terms and conditions of this Consent Judgment and to execute and legally bind such Party to this document.

## XIII.   FINAL JUDGMENT

26.     Upon approval and entry of this Consent Judgment by the Court, this Consent Judgment shall constitute a final judgment between the State and BP Defendants. The Parties

shall bear their own costs and fees related to this Litigation and to the negotiation, preparation, execution and delivery of this Agreement.

IT IS SO ORDERED THIS __5th__ DAY OF __January,__ ~~2022~~ 2023

*[signature]*

Honorable William E. Smith
United States District Court Judge

THE UNDERSIGNED PARTIES enter into this Consent Judgment in the matter of *State of Rhode Island v. Atlantic Richfield Co., et al* (United States District Court for the District of Rhode Island).

**FOR THE STATE OF RHODE ISLAND**

PETER F. NERONHA
ATTORNEY GENERAL

By: _____
Alison B. Hoffman
Special Assistant Attorney General

Dated: 1/4/23

**FOR DEFENDANT BP PRODUCTS NORTH AMERICA INC.**

Vilia Drazdys – Senior Counsel, Litigation & Disputes
Name and Title

_____
Signature

Dated: December 21, 2022

**FOR DEFENDANT ATLANTIC RICHFIELD COMPANY**

Vilia Drazdys – Senior Counsel, Litigation & Disputes
Name and Title

_____
Signature

Dated: December 21, 2022